[Civ. No. 35444. Second Dist., Div. Three. Dec. 31, 1969.]

GLEN MOWRER, JR., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

## COUNSEL

Ball, Hunt, Hart & Brown, Ball, Hunt, Hart, Brown & Baerwitz, Joseph A. Ball and Cary A. Rosen for Petitioner.

John D. Maharg, County Counsel, Jean Louise Webster, Lynard C. Hinojosa and Harold S. Vites, Deputy County Counsel, for Respondent.

## OPINION

**THE COURT.**—Petitioner, a deputy public defender of the County of Los Angeles, seeks a writ of certiorari to review an order of the respondent court holding him in contempt.

It is the practice of the public defender's office in the County of Los Angeles to attempt to assign a deputy public defender working in felony trials as many original trial settings as possible in a single department of the respondent court. However, this is not always possible, and often an individual deputy will have matters set in departments of the court other than the one in which he is generally engaged. In addition, under the "overflow system"[1] in effect in the Central Criminal Division of respondent court, on the day fixed for trial of a particular case the matter may be transferred to another department of the court for trial if the department of original setting is trying another case or is for any reason unable to handle a particular case. The deputy public defender who tries a case is also expected to return to the department in which he tried the case for the probation and sentence hearing.

Between February and August 1969 petitioner was assigned trials originally set in approximately 10 different departments of the Central Criminal Division of the respondent court. However, commencing in May 1969, most of his cases were set in Department 115 of the court.

On August 8, 1969, the following colloquy took place between petitioner and the judge presiding in Department 115: "THE COURT: Mr. Mowrer, when you have matters on the calendar, will you kindly remain in the courtroom until we dispose of the calendar matters. MR. MOWRER: I had two

---

[1]Under the Master Calendar program utilized in the Central Division Criminal Courts in Los Angeles County, three or four new cases are preset on the daily calendar in each criminal department between 30 to 60 days from the date of plea in the Master Calendar Court (Department 100). On the day set for trial, each trial judge calls his own calendar and tries to dispose of the cases set in his court. If he does, he is expected to call the Office of the Criminal Courts' Coordinator for another case. On the other hand, if he is engaged in a trial, or for any reason cannot dispose of all of his cases, his clerk will advise the Office of the Criminal Courts' Coordinator who may then transfer the other cases to an "open" court.

witnesses I had to talk with. THE COURT: I don't care what you had outside, sir. MR. MOWRER: Well, I'm sorry, your Honor. There are other attorneys in the courtroom besides myself. I had to talk to witnesses. THE COURT: I'll put that in the form of an order for you, Mr. Mowrer, so there won't be any misunderstanding. I expect you to be here at 9:00 o'clock every morning, and I expect you to remain in this courtroom until such time as the calendar matters have been concluded and you have been excused by this Court. MR. MOWRER: I cannot be here every morning at 9:00 o'clock, your Honor, because I have other courts that have my cases on the calendar. THE COURT: Well, you get here first and get excused. MR. MOWRER: I don't see how you can order me to do that, your Honor."

On August 21, 1969, petitioner appeared in Department 115 at 9 a.m. in a case entitled People v. Lois Jones. The matter was trailed and continued to August 22, 1969, at 9 a.m. That same day petitioner also had appearances set in Departments 102, 105 and 111 of the respondent court. Petitioner testified at his contempt hearing that on August 21, 1969, he argued a motion for new trial in Department 111, then went to Department 105 at 1:30 p.m. for a probation and sentence hearing and requested that it go over to 2:30 that afternoon, and then proceeded to Department 102 where he had a pretrial 1538.5 (Pen. Code, § 1538.5) motion to argue. When he called Department 105 at 3 p.m. he was advised that his matter had been continued to 9 a.m. of the following morning (August 22). Petitioner testified that he left Department 102 "a little after 5:00 o'clock."

On August 22, 1969, petitioner arrived at his office prior to 9 a.m. He testified that he knew it was the practice of the presiding judge in Department 105 to take the bench promptly at 9 a.m. and that it was usually the practice of the judge presiding in Department 115 to take the bench between 9:20 a.m. and 9:45 a.m. Accordingly, petitioner informed Deputy Public Defender McGarry, who was also appearing in Department 115 that morning, that he had to appear in Department 105 briefly and that he expected to be present in Department 115 before the judge in that department took the bench, but that if he was late, it would be because he was detained in Department 105. The record indicates that when Mr. Mowrer's first matter (Ornelas) was called by the judge in Department 115 on the morning of August 22, Mr. McGarry responded, "He will be over a little while later, your Honor. Another appointment." He did not advise the judge of Mr. Mowrer's whereabouts.

Petitioner testified he arrived in Department 105 shortly before 9 a.m. and attempted to call Department 115 but that he was unable to do so because the judge presiding in Department 105 took the bench before he had time to complete his call. Witnesses testified at the contempt hearing

that the judge presiding in Department 105 on August 22 insisted that no telephone calls be made by attorneys in the courtroom while court was in session. At approximately 10 a.m. petitioner made a call to the clerk of Department 115 and advised him that he was delayed in Department 105.

After petitioner concluded the probation and sentence hearing set in Department 105, he proceeded immediately to Department 115, where the following exchange took place between counsel and the court upon his arrival: "THE COURT: Mr. Mowrer. MR. MOWRER: Yes, your Honor. THE COURT: Where were you at 9:00 a.m. this morning? MR. MOWRER: I was in Department 105, your Honor. THE COURT: Do you recall the order I made about a week ago that you should be present in this court at 9:00 a.m. until excused? MR. MOWRER: I recall at that time also telling the Court that I don't feel it was a proper order and wouldn't and couldn't comply with it if I had other matters in the court. In other words— THE COURT: In that case I order you to return to this courtroom at 1:45 this afternoon to show cause why the Court should not hold you in contempt for failing to be present in this court at 9:00 a.m. this morning."

At his contempt hearing on August 27, 1969, petitioner testified that he had gone to Department 105 first because he believed that he could conclude his business in Department 105 before the judge in Department 115 took the bench and because he knew there would be at least two other deputy public defenders in Department 115 that morning to handle any "unexpected business."

On August 27, 1969, after an extensive contempt hearing which fully complied with the procedural requirements delineated in *Arthur* v. *Superior Court,* 62 Cal.2d 404 [46 Cal.Rptr. 441, 398 P.2d 777], for a so-called "hybrid contempt" arising out of the alleged failure of an attorney, without valid excuse, to be present at the announced time for resumption of a criminal trial in which he was engaged, the petitioner was found in contempt by the respondent court. The order of the court was as follows: "The contempt proceedings against Glen Mowrer, Jr., having come on regularly on an Order to Show Cause before this court on August 27, 1969, and the said Glen Mowrer appearing in person and being represented by counsel, Fred T. Kilbride, and evidence having been presented and argued and the matter having been submitted, and good cause appearing therefor, and it appearing that: One, a lawful order was given by the undersigned to said Glen Mowrer, Jr. as Deputy Public Defender assigned to handle criminal cases on the Court's calendar in Department 115 of the Superior Court of the County of Los Angeles to appear in Department 115 on each court day at 9:00 a.m. to represent defendants in matters assigned and to be assigned to the Public Defender in Department 115. Said order further requires Glen Mowrer, Jr. to remain in Department 115 each day

until excused by the court. In addition, there were matters on the Court's calendar in Department 115 set for hearing and appearance on August 22, 1969 at 9:00 a.m. which had previously been assigned to the said Glen Mowrer, Jr. as Deputy Public Defender to represent the defendants therein. Two, the order was given on August 8, 1969 by the Court in Department 115. Three, the said Glen Mowrer, Jr. was present and heard and understood said order. Four, the said Glen Mowrer, Jr. did wilfully neglect and failed to so appear in Department 115 at 9:00 a.m. on August 22, 1969 without sufficient reason or excuse for such failure. Five, the said Glen Mowrer, Jr. had the ability to appear in Department 115 at 9:00 a.m. on August 22, 1969. And six, the failure of said Glen Mowrer, Jr. to appear at said time and place obstructed and delayed the Court's business with respect to the calendar matters assigned to the said Glen Mowrer, Jr., as well as a jury trial which was then in progress in Department 115. Accordingly, it is hereby, ordered adjudged and decreed that the said Glen Mowrer, Jr. is in contempt of this court in his failure to obey such order and in his failure to appear in this Department at 9:00 a.m. on August 22, 1969 to handle the matters which previously had been assigned to him and which were on the Court's calendar at that time and that said Glen Mowrer, Jr. is hereby fined the sum of fifty dollars payable forthwith. In default of payment of said fine, the said Glen Mowrer, Jr. shall be imprisoned in the County Jail for two days."

 Whether petitioner's acts constituted a contempt is jurisdictional, and in the absence of a recital of facts sufficient to constitute a contempt, the order adjudging the petitioner in contempt must be annulled. (*In re Ciraolo,* 70 Cal.2d 389, 393 [74 Cal.Rptr. 865, 450 P.2d 241]; *Arthur* v. *Superior Court,* 62 Cal.2d 404, 409 [42 Cal.Rptr. 441, 398 P.2d 777]; *Chula* v. *Superior Court,* 57 Cal.2d 199, 203 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421].)

 "In the absence of arbitrariness on the part of the sentencing judge and with a showing that a reasonable opportunity was afforded the attorney to explain the reasons for his absence, this court should not annul contempt proceedings against attorneys who fail to appear in court *when properly ordered to do so.*" (Italics added.) (*Arthur* v. *Superior Court, supra,* at p. 409; *Inniss* v. *Municipal Court,* 62 Cal.2d 487, 490 [42 Cal.Rptr. 594, 399 P.2d 50].)

 In the instant case we have concluded that the petitioner has presented two valid grounds for annulling the contempt order. First, the blanket order made by the judge presiding in Department 115 on August 8, 1969, was in excess of the jurisdiction of the court. The violation

of an order in excess of the jurisdiction of an issuing court cannot produce a valid judgment of contempt. (*In re Berry,* 68 Cal.2d 137 [65 Cal.Rptr. 273, 436 P.2d 273]; *Fortenbury* v. *Superior Court,* 16 Cal.2d 405, 407-408 [106 P.2d 411].) ■ Second, the record indicates facts sufficient to establish that the petitioner had a valid excuse for his lateness in arriving in Department 115 on the morning of August 22, 1969.

■ A court has inherent power to exercise reasonable control over all proceedings connected with the litigation before it (*Cooper* v. *Superior Court,* 55 Cal.2d 291 [10 Cal.Rptr. 842, 359 P.2d 274]; *Lyons* v. *Superior Court,* 43 Cal.2d 755, 758 [278 P.2d 681]) in order "to insure the orderly administration of justice" (*Hays* v. *Superior Court,* 16 Cal.2d 260, 264 [105 P.2d 975]) and maintain "the dignity and authority of the court" (*Vaughn* v. *Municipal Court,* 252 Cal.App.2d 348, 358-359 [60 Cal.Rptr. 575]), and to summarily punish for acts committed in the immediate view and presence of the court when they impede, embarrass or obstruct it in the discharge of its duties. (*Cooper* v. *Superior Court, supra,* p. 301; *Lyons* v. *Superior Court, supra,* p. 758; *Raiden* v. *Superior Court,* 34 Cal.2d 83, 86 [206 P.2d 1081]; *Blodgett* v. *Superior Court,* 210 Cal. 1, 10 [290 P. 293, 72 A.L.R. 482].)

In addition to its inherent power, the Legislature has granted the power to every court to provide for the orderly conduct of proceedings before it. (Code Civ. Proc., § 128, subd. 3; Pen. Code, § 1044) and "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto." (Code Civ. Proc., § 128, subd. 5.) ■ At the same time, however, the court's right to control its own proceedings must be exercised in the light of "the fundamental interest of the public in maintaining an independent bar." (*Smith* v. *Superior Court,* 68 Cal.2d 547, 560 [68 Cal.Rptr. 1, 440 P.2d 65]; *Cooper* v. *Superior Court,* 55 Cal.2d 291, 300-301 [10 Cal.Rptr. 842, 359 P.2d 274]; *Gallagher* v. *Municipal Court,* 31 Cal.2d 784, 795 [192 P.2d 905].)

■ When a public defender is appointed to represent a defendant accused of crime, he becomes the attorney for the defendant for all purposes of the case to the same extent as if regularly retained and employed by the defendant. (*In re Hough,* 24 Cal.2d 522 [150 P.2d 448]; *People* v. *Avilez,* 86 Cal.App.2d 289 [194 P.2d 820].) ■ The judge in a trial court has no more authority or control over a public defender than any other attorney practicing before the court. (See 40 Cal.Jur.2d 321; 45 Minn.L.Rev. 715, 731.)

■ The public defender is not a court attaché. Each public defender derives his authority by delegation from the Public Defender of Los Angeles

County, whose powers and duties are prescribed by statute. (*Ingram* v. *Justice Court,* 69 Cal.2d 832, 836 [73 Cal.Rptr. 410, 447 P.2d 650].) The County of Los Angeles established a public defender's office in 1914 pursuant to provisions in the original County Charter (§ 23) and in 1921 the Legislature enacted a general enabling statute (Stats. 1921, ch. 245, now Gov. Code, §§ 27700-27711.) The Los Angeles County Charter provides for an appointive public defender. The salary and expenses of the public defender are county charges (Gov. Code, §§ 27708, 27709, 27711), and all deputy public defenders enjoy civil service status.

Petitioner concedes the fact that in any given case, as any other attorney, he can be ordered to appear in any department of respondent court at a given time if he has a matter scheduled in that department. However, petitioner correctly contends that there is no basis upon which the respondent court can appropriate his exclusive services and order him to be present continually in Department 115 between 9 a.m. and 5 p.m. of every working day. ██ A deputy public defender is assigned by his office to handle various criminal cases. The fact that he is often assigned by his office to cases set in one particular department of the court for the purpose of efficiency does not confer upon the presiding judge of that department the right to command the presence of that deputy public defender in that department at all times.

Under the "overflow system" in effect in the Central Division Criminal Courts, petitioner is often called upon to appear in several departments of the superior court in a single day. The record indicates that petitioner appeared in Departments 102, 105, 111 and 115 on August 21, 1969. As of August 27, 1969, petitioner testified he had 57 active cases set in 7 different departments of respondent court. Petitioner also noted that he is required to attend probation and sentence hearings and probation violation hearings that may be set in other departments. Many of the petitioner's cases set in other courts originated in Department 115 and were transferred from Department 115 to other departments.

██ There are no provisions in the Judicial Council or superior court rules or in any statute that would authorize a judge in one department to make a blanket order creating a priority for that department over other departments of the superior court with respect to the services of an attorney —be he in private practice or a member of the public defender's office.

██ The record discloses prima facie evidence of adequate excuse for petitioner's lateness in arriving in Department 115 on the morning of August 22, 1969. He had a matter trailing from the prior day in Department 105 which he believed could be concluded prior to the judge taking the bench in Department 115. Petitioner believed that one of the other

deputy public defenders present that morning in Department 115 could handle any emergencies that might arise. He made an attempt to reach Department 115 prior to 9 a.m. and called the clerk of that department at 10 a.m. to advise him that he would be late. He went to Department 115 as soon as he completed his work in Department 105. At no time were there any delays occasioned by any personal business of petitioner or because of any deliberate intent on his part to be late. The facts in this case are not like those in *Arthur* v. *Superior Court,* 62 Cal.2d 404 [42 Cal.Rptr. 441, 398 P.2d 777], where the court described the conduct of attorney Arthur as follows (at p. 411): "When he departed from Judge Wapner's courtroom he did so in a callously indifferent manner . . . ." The facts here are more akin to those in *Miller* v. *Municipal Court,* 249 Cal.App.2d 531 [57 Cal.Rptr. 578], where the court described the conduct of attorney Miller (also a deputy public defender) as follows (at p. 537): "Petitioner Miller's delay in appearing was not due to an overindulgence in his own business; he was not reprehensible because he had taken on more business than he could handle. After all, he was a deputy, and his chief piled a job on him that was not of his own choosing." The court, in *Arthur, supra,* recognized this problem as well when it stated (at p. 411): ". . . to require attorneys always to be present when scheduled, without allowing any flexibility, would be unrealistic."

We are sympathetic to the problems faced by the trial judge. As the court pointed out in *Lyons* v. *Superior Court,* 43 Cal.2d 755, 758 [278 P.2d 681]: ". . . it is clear that when an attorney who is the sole counsel appearing for a defendant in a felony case absents himself from the trial, he interrupts and effectively blocks, for the period of his absence, all proceedings in that trial." Court delays are a hardship on the litigants and create problems for all parties concerned with the administration of justice. Nevertheless, no one department of a multi-judge court can operate as a world unto itself. It must take into consideration the problems and pressures imposed on many of the persons involved in criminal court proceedings in this era of ever-increasing court caseloads.

"[T]he power to adjudicate a direct contempt 'is necessarily of an arbitrary nature, and should be used with great prudence and caution. A judge should bear in mind that he is engaged, not so much in vindicating his own character, as in promoting the respect due to the administration of the laws . . . .' " (*Lyons* v. *Superior Court,* 43 Cal.2d 755, 762-763 [278 P.2d 681].)

The judgment of contempt is annulled.

Respondent's petition for a hearing by the Supreme Court was denied February 25, 1970.