[No. B055058. Second Dist., Div. Five. July 29, 1991.]

ELIZABETH SEYKORA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Elizabeth D. Seykora and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick W. Bennett, Assistant County Counsel, for Respondent.

OPINION

ASHBY, Acting P. J.—Elizabeth Seykora, a Los Angeles County Deputy Public Defender, challenges an order of the respondent court imposing sanctions against her in the amount of $250, pursuant to Code of Civil Procedure section 177.5.[1]

---

[1]Section 177.5 provides: "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the county in which the judicial officer is located, for any violation of a lawful court order by a person, done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court. For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both.

"Sanctions pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or on the court's own motion, after notice and opportunity to be heard. An order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

### FACTS AND PROCEDURAL HISTORY

On December 12, 1990, Seykora was the public defender's calendar deputy assigned to Department 118, the courtroom presided over by Judge Reginald A. Dunn.[2] Approximately 10:10 a.m., as the morning calendar was being called, Seykora informed the court that she "had to be in another court and had to leave." Judge Dunn asked her to "please be seated and handle the two remaining matters." Seykora responded that "they would have to trail until tomorrow because she had to leave to go to another court." Once again, Judge Dunn asked her to remain. Once again, Seykora responded that she had to leave.

The court again ordered her to remain and asked her not to force the court to do something that it did not want to do. Seykora then asked the court to call her "other court" and inform them why she would be late. The court offered Seykora the use of its phone for this purpose, but she refused to do so and began to walk toward the door. The court asked her to obey the court's order and to remain. Seykora turned her back and walked out the door.

The next day (December 13), Seykora appeared in Judge Dunn's court accompanied by counsel, Deputy Public Defender Albert Menaster. At that time, the court served Seykora with a document entitled "NOTICE OF SANCTIONS PURSUANT TO CCP SECTIONS 117 and 117.5 [*sic*]." In his order, which he read into the record, Judge Dunn recited the facts as stated above and concluded:

"There is no question but that Ms. Seykora heard and understood the order of the court by reason of the facts that (1) the order was repeated twice audibly and in open court, and (2) Ms. Seykora responded to said order by stating her intent to leave. This conduct, in refusing to obey a reasonable and lawful order despite repeated requests to do so constitutes a violation of an attorney's duty to maintain the respect due to judicial officers as well as a willful disobedience of a lawful order of the court. Accordingly, you are hereby given notice that pursuant to sections 177(1), 177(2) and 177.5 of the Code of Civil Procedure, the court hereby imposes sanctions against Deputy Public Defender Elizabeth Seykora in the amount of $250.00. You are ordered to pay this amount to the clerk of Department 118 by Tuesday, December 18, 1990."

After the court read the order into the record, Menaster asked if he could be heard, and the following discourse occurred:

---

[2]The proceedings on December 12 were not reported. The statement of facts is taken from the petition and from the court's order imposing sanctions.

"Mr. Menaster: I may have missed something, but I would like to have a hearing. The court has recited some facts here, which I've chatted with a couple of people and have been informed by others that this sequence of facts is not exactly what happened—and, in fact, what happened, as I understand it, is that at a point after the court ordered Miss Seykora to remain, Miss Seykora advised the court that she had argued for another counsel to handle the remaining matters on the calendar.

"The Court: That's not correct. She had argued for someone else to trail them until tomorrow.

"Mr. Menaster: Well, there may be a dispute, factually.

"The Court: Whether there is or not, I'm telling you what the facts are. She argued to have the cases trailed until tomorrow.

"Mr. Menaster: Well, I don't know if that's correct. In response to that, Miss Seykora understood—Miss Seykora's understanding of what happened —and some of the people that I have talked to concur in that what happened next was that, after Miss Seykora advised the court of this, Miss Seykora left and the court didn't then say 'That's not acceptable,' or 'You are still ordered to remain,' leading her to believe that that was acceptable to the court.

"The Court: All right, Mr. Menaster. That's sufficient. The order stands. And you know you have your remedies, why don't you take those."

Menaster repeated his request for a hearing, stating that "we don't have an uncontested record." The court replied, "Who are you going to have this hearing before? . . . If it was before me, I have my recollection, and I think I know what transpired. If you have other people to come in who have seen or recollect differently, that's not going to change because I was here and I think I know how it transpired. What you'll have to do is seek remedies elsewhere because it would be an act of futility to get into this kind of a debate in a formal hearing . . . ."

This petition was filed December 14, 1990, and summarily denied December 17, 1990. Seykora filed a petition for review in the Supreme Court. The county counsel, on behalf of the respondent court, filed a response to the petition on January 7, 1991. On January 24, 1991, the Supreme Court granted Seykora's petition for review and directed this court to issue an alternative writ.

## AVAILABILITY OF WRIT REVIEW

Seykora correctly contends that she is entitled to review by way of extraordinary writ. A judgment directing the payment of monetary sanctions may be directly appealed only if the amount exceeds $750. (Code Civ. Proc., § 904.1, subd. (k)) Orders imposing lesser sanctions may be reviewed on an appeal after entry of final judgment in the main action (*ibid.*), or, at the discretion of the Court of Appeal, upon petition for an extraordinary writ. In this matter, there is no "main action" to which the respondent court's order might attach. Accordingly, review by way of extraordinary relief is appropriate.

## SEYKORA'S CONTENTIONS

(1)   The court did not give her adequate notice of its intention to impose sanctions;

(2)   The court did not give her the "opportunity to be heard";

(3)   The imposition of sanctions was an abuse of discretion because her disobedience of the court's order was justified; and

(4)   The sanction order is invalid because it does not state that she had the ability to comply with the court's order.

## DISCUSSION

Section 177.5 was enacted in 1982 at the request of the superior courts of Los Angeles and San Diego Counties. (Enrolled Bill Mem. Assem. Bill No. 3573, dated Sept. 23, 1982.) According to the author of the bill and its proponents, section 177.5 was enacted to "insure all parties are present and prepared for court appearances" and "to help eliminate unnecessary delays in civil proceedings." (Enrolled Bill Rep., Assem. Bill. No. 3573.)[3] It was designed to supplement section 128.5, which authorizes a trial court to order a party or a party's attorney, or both, to pay to another party reasonable expenses incurred by that party as a result of bad faith actions or tactics which are frivolous or solely intended to cause unnecessary delay. However, unlike section 128.5, which requires the court to make a subjective determination of a party's intentions, section 177.5 requires only that the sanctioned party violate a lawful court order "without good cause or substantial justification."

---

[3]The Court of Appeal recently held that section 177.5 also applies to criminal as well as civil proceedings. (*People* v. *Tabb* (1991) 228 Cal.App.3d 1300 [279 Cal.Rptr. 480].)

As it must to meet due process requirements (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942]), section 177.5 provides that sanctions "shall not be imposed except on notice contained in a party's moving or responding papers; or on the court's own motion, after notice and opportunity to be heard." Seykora contends that the court imposed sanctions in this case without sufficient advance notice, and without affording her the opportunity to be heard.

■ 1. Seykora first contends that the cursory notice she received that the court was considering the imposition of sanctions (the "vague threat," "Don't make the court do something it doesn't want to do"), was insufficient to satisfy due process requirements.

"[A]dequacy of notice should be determined on a case-by-case basis to satisfy basic due process requirements. The act or circumstances giving rise to the imposition of expenses must be considered together with the potential dollar amount." (*Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 932 [219 Cal.Rptr. 562].) In *Lesser*, a case construing identical language in section 128.5, notice of less than one day was held to be inadequate where, between the granting of a nonsuit and a hearing the next day, counsel was compelled to prepare a declaration demonstrating that his seven-year-old lawsuit was filed in good faith. Counsel could not make the required showing and the court imposed sanctions of nearly $60,000.

In the present case, however, the notice afforded by the respondent court was adequate. First, the reason for the notice requirement is to advise the responding party that the imposition of sanctions is being considered, and to give the party an opportunity prepare for the hearing. In the present case, Seykora conceded she had received notice of the court's intention to impose sanctions, and she came to court on December 13 accompanied by counsel and prepared to present her case.[4]

Second, section 177.5 does not require a showing of good faith, as does section 128.5. In fact, section 177.5 does not even require a willful violation, but merely one committed without "good cause of substantial justification," that is, without a valid excuse. (*People* v. *Tabb, supra,* 228 Cal.App.3d at p. 1311.) Thus, the burden on an attorney facing sanctions under section 177.5 is not as onerous as that imposed by section 128.5

■ 2. Seykora next contends that she was denied due process because the court refused to permit a hearing when Menaster requested it. By

---

[4]Seykora informed the court: "I have received notice. At this time, I need to make a record. I will object and request a hearing before the court moves on. I have counsel present."

"hearing," Seykora means an evidentiary hearing in which she would have been permitted to call witnesses, "people who are respected by the judge," and present testimony which might create a doubt in the court's mind as to how events transpired.

The "opportunity to be heard," in the context of a hearing on the issue of sanctions, does not mean the opportunity to present oral testimony. A similar argument was made in *Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019 [215 Cal.Rptr. 708], a case construing section 128.5. In *Lavine*, the sanctioned party complained that the summary nature of a section 128.5 hearing denied her the " 'rights associated with due process to have evidentiary hearings, the subpena power of the court, to call witnesses and to be generally given a reasonable opportunity to defend oneself. . . .' " The Court of Appeal rejected this argument, noting that while "[n]othing in section 128.5 precludes a party against whom sanctions are sought thereunder from subpenaing and producing evidence and witnesses or otherwise defending against the request; *the scope of a hearing on an application for sanctions is within the trial court's discretion, . . .*" (169 Cal.App.3d at p. 1028; italics added.)

In the present case, the court did not abuse its discretion in denying Seykora's request to call witnesses on her behalf. Seykora's conduct was similar to a direct contempt, that is, contempt "committed in the immediate view and presence of the court, or of the judge at chambers." (Code Civ. Proc., § 1211). Such violations may be punished summarily. (*Ibid.*) Where the court observes the violation directly, due process is served if the offending party is given the opportunity to appear and offer an excuse for his or her behavior. (See *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 410 [42 Cal.Rptr. 441, 398 P.2d 777].) The court then makes a factual determination as to whether the excuse is sufficient. This court must accept that factual determination. (*Ibid.*)

In this case, Menaster, appearing as Seykora's counsel, presented an excuse on her behalf. Seykora's excuse was twofold. First, Menaster suggested that Seykora had misunderstood the court's intentions; Seykora claimed she was led to believe her departure was acceptable because the court did not repeat its admonition as she walked out the door. However, it is undisputed that the court had, at least twice, asked Seykora to remain in the courtroom, and that the court said, as she was leaving, "Don't make the court do something it doesn't want to do." The fact that Seykora may have miscalculated the repercussions of her actions does not create a "factual dispute."

Second, Menaster claimed there was a "factual dispute" as to whether Seykora obtained substitute counsel to handle her calendar matters or asked

that the remaining matters be trailed. This point is irrelevant, however, since the court specifically ordered that the matters be handled by Seykora and not by other counsel.

There is no question that a more formal hearing would have been preferable, but we are more concerned with the substance of the proceedings than the form. Here, the court heard Menaster's explanation of Seykora's position. At best, Menaster was offering to present evidence from several unidentified witnesses, none of whom could read Seykora's mind or present any evidence of the events which transpired other than a possible contradiction of the court's recollection, which Seykora had already done. If we were to remand this matter to the respondent court for further proceedings, there is no reason to believe that this would not be an idle act which would merely dissipate additional valuable court time. The substance would remain the same. Only the form would change.

■ 3.   Seykora next contends that she was justified in disobeying the respondent court's order because she was complying with the order of another court.

In support of her position, Seykora cites *Mowrer* v. *Superior Court* (1969) 3 Cal.App.3d 223 [83 Cal.Rptr. 125], a contempt case in which a superior court judge issued a blanket order that Mowrer, the deputy public defender assigned to his courtroom (Department 115), appear there every day at 9 a.m. sharp. What prompted this order was that one day Mowrer left the courtroom before the calendar matters were disposed of because he "had two witnesses he had to talk with." (*Id.*, at p. 227) When the court issued its blanket order, Mowrer stated that he could not be in court every day at 9 a.m. because "I have other courts that have my cases on the calendar." The court replied that Mowrer should "get here first and get excused." (*Ibid.*)

One the morning of August 22, 1969, two weeks after the blanket order was issued, Mowrer had a matter in Department 105 which had been trailed to that morning at 9 a.m. He knew the judge in Department 105 (unlike the one in 115) took the bench promptly at 9 a.m., so he informed another deputy in Department 115 that he expected to be there before the judge took the bench, but if he wasn't it was because he had been detained in Department 105.

When Mowrer finally arrived in Department 115 around 10 a.m., the court took him to task for violating the blanket order, and directed him to appear later that day for an order to show cause re contempt. (3 Cal.App.3d at p. 228) After an "extensive contempt hearing," Mowrer was found to be in contempt and sentenced to two days in the county jail. (*Id.*, at p. 229.)

The Court of Appeal reversed the contempt order and found the blanket order to be invalid as well. The court stated: "A deputy public defender is assigned by his office to handle various criminal cases. The fact that he is often assigned by his office to cases set in one particular department of the court for the purpose of efficiency does not confer upon the presiding judge of that department the right to command the presence of that deputy public defender in that department at all times." (3 Cal.App.3d at p. 231.)

According to Seykora, *Mowrer* stands for the proposition that the fact one court has ordered counsel to appear is prima facie justification for not appearing in another court. Seykora's reliance on *Mowrer* is misplaced. Although that case might present a defense to a contempt charge in the *other* department, it does not excuse her disobedience of Judge Dunn's order.

4. Finally, Seykora contends that the court's order re sanctions was defective because it didn't state that she had the ability to comply with the court's order to remain in the courtroom. All of the cases cited by Seykora relate to contempt orders, which require such a finding; sanction orders such as the one in issue here do not.

DISPOSITION

The petition for writ of mandate is denied.

Boren, J., concurred.

**GRIGNON, J.,** Dissenting.—Code of Civil Procedure section 177.5 empowers a judicial officer to impose monetary sanctions payable to the county "for any violation of a lawful court order by a [witness, a party, or a party's attorney], done without good cause or substantial justification." Such sanctions may be imposed "on the court's own motion after notice and opportunity to be heard." The order imposing sanctions must be in writing and must set forth the conduct or circumstances justifying the order.

Petitioner contends that respondent court improperly imposed sanctions in that (1) she did not receive adequate notice, (2) she did not have an opportunity to be heard, (3) respondent court's order demanding that she remain in the courtroom was unlawful, (4) the sanctions order does not state that she had the ability to comply with the order, and (5) she did not willfully violate respondent court's order. I concur with the majority's conclusion that respondent court's order to remain in the courtroom was lawful, that the sanctions order need not recite an ability to comply, and that section 177.5 does not require willfulness.

I dissent from the majority's conclusion that petitioner received adequate notice and opportunity to be heard. The evidence is undisputed that she received notice of respondent court's imposition of sanctions concurrently with the "hearing" on the matter and that she was given no meaningful opportunity to be heard.

The events leading to the imposition of sanctions pursuant to section 177.5 occurred between 10 a.m. and 10:30 a.m., on the morning of December 12, 1990. Sometime thereafter, respondent court prepared a "NOTICE OF SANCTIONS PURSUANT TO CCP SECTIONS 117 and 117.5 [*sic*]." The notice set forth respondent court's version of the incident which took place on December 12, found that the conduct of petitioner, as set forth in the notice, constituted a willful disobedience of a lawful order of respondent court and imposed sanctions in the amount of $250. The concluding paragraph of the notice states:

"Accordingly, [petitioner is] hereby given notice that pursuant to sections 177(1), 177(2) and 177.5 of the Code of Civil Procedure, the court hereby imposes sanctions against [petitioner] in the amount of $250.00. [Petitioner is] ordered to pay this amount to the clerk of [respondent court] by Tuesday, December 18, 1990."

The next day, December 13, at 9 a.m., petitioner appeared in respondent court with counsel. She was handed and acknowledged receipt of the notice. She requested a hearing. Respondent court read into the record the notice just handed to petitioner. Counsel for petitioner then specifically requested a hearing. He indicated that his client disputed that the facts were as set forth in the notice, indicated that witnesses other than petitioner would substantiate petitioner's version of the facts, and stated that at the very least there was a misunderstanding.

Respondent court replied: "All right, Mr. Menaster [petitioner's counsel]. That's sufficient. The order stands. . . . [¶] If you have anything further to put on the record, do so and let me get on with the rest of my calendar. But the order stands." Petitioner's counsel again requested a hearing. Respondent court replied: "Who are you going to have this hearing before? [¶] If it was before me, I have my recollection, and I think I know what transpired. If you have other people to come in who have seen or recollect differently, that's not going to change because I was here and I think I know how it transpired. [¶] . . . [I]t would be an act of futility to get into this kind of a debate in a formal hearing."

It is undisputed that, "[a]dequate notice is mandated not only by statute, but also by the due process clauses of both the federal [citation], and state

[citation] Constitutions. [Citation.]" (*Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 930 [219 Cal.Rptr. 562].)[1] "[A]dequacy of notice should be determined on a case-by-case basis to satisfy basic due process requirements." (*Id.* at p. 932.) Notice on the court's own motion at midday, with a hearing ordered at 9 a.m. the next day is inadequate. (*Ibid.*) However, notice given concurrently with the "hearing" is adequate where the parties so stipulate. (*Caldwell* v. *Samuels Jewelers* (1990) 222 Cal.App.3d 970, 974-975 [272 Cal.Rptr. 126].)

It is clear from the record that the notice given in this case was woefully inadequate. The notice was given concurrently with the hearing and petitioner did not stipulate that notice was adequate. She simply stated that she had received the notice. Indeed, it is obvious from the record that petitioner appeared in court on December 13, intending to obtain a future hearing date. She had insufficient time to interview or subpeona witnesses or prepare declarations of proposed testimony. Counsel for petitioner had briefly "chatted" with potential witnesses, but had insufficient time to prepare even an offer of proof.

More importantly, the so-called notice of intent to impose sanctions and opportunity to be heard was in fact nothing of the kind. The notice prepared by respondent court and served on petitioner on December 13, was notice that respondent court hereby imposed sanctions. There was no mention in the notice of a hearing. There was no need to notice a hearing, because the sanctions had already been imposed without notice and without an opportunity to be heard. This inescapable conclusion is buttressed by respondent court's statement that the "order stands," indicating that the sanctions order had already issued before petitioner had any notice or opportunity to be heard.

Nor does respondent court's statement on December 12, "don't make the court do something it doesn't want to do," constitute adequate notice of the court's intention to impose sanctions against petitioner under Code of Civil Procedure section 177.5. The total insufficiency for due process purposes of the court's statement is readily apparent. It does not state that the court is considering the imposition of section 177.5 sanctions, it does not set forth the sanctionable conduct, and it sets no time for a hearing.

In addition to adequate notice, petitioner was also entitled to an opportunity to be heard. The nature and scope of the required hearing is not mandated by statute, but is within the sound discretion of the trial court as

---

[1]*Lesser* concerned sanctions imposed pursuant to Code of Civil Procedure section 128.5. The language of Code of Civil Procedure sections 128.5 and 177.5, concerning notice and opportunity to be heard, are identical.

circumscribed by due process requirements. "Nothing in section 128.5 precludes a party against whom sanctions are sought thereunder from subpenaing and producing evidence and witnesses or otherwise defending against the request; the scope of a hearing on an application for sanctions is within the trial court's discretion, as with motions generally." (*Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1028 [215 Cal.Rptr. 708].)

It is neither necessary nor appropriate for an appellate court to specify with particularity the precise requirements of such a hearing in order to provide trial courts with a bright-line rule applicable for all time and under all circumstances. The parameters of the requisite hearing must be determined on a case-by-case basis, in light of the surrounding circumstances. At an absolute minimum, however, a person against whom sanctions may be imposed under Code of Civil Procedure section 177.5 must receive a meaningful opportunity to be heard prior to the imposition of sanctions. The trial court must conduct an objective hearing to determine whether a violation of a court's lawful order was committed without good cause or substantial justification. (See *Inniss* v. *Municipal Court* (1965) 62 Cal.2d 487, 490 [42 Cal.Rptr. 594, 399 P.2d 50].)

No such objective hearing took place in this case. It is clear that neither petitioner nor her counsel considered the proceedings of December 13 to be a "hearing," since petitioner initially requested a hearing and petitioner's counsel repeatedly requested a hearing virtually to the conclusion of the proceedings. Nor did respondent court consider that it was conducting a hearing. In response to petitioner's counsel's repeated requests for a hearing, the court asked: "Who are you going to have this hearing before?" Respondent court never stated in response to counsel's requests that petitioner was in fact having a hearing, but instead concluded that any such hearing would be futile because the judge had already made up his mind.

Nor can one compare the conduct of petitioner in this case to an act of direct contempt. Under Code of Civil Procedure section 1211, acts of direct contempt committed in the immediate presence of the trial court may be summarily adjudicated, although the offending party must be given an opportunity to appear and offer an excuse for his or her behavior. (*Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 410 [42 Cal.Rptr. 441, 398 P.2d 777]; *Inniss* v. *Municipal Court, supra,* 62 Cal.2d at p. 490.) Code of Civil Procedure section 177.5, on the other hand, expressly requires notice and an opportunity to be heard. Thus, the two statutes are not analogous on this issue. Moreover, the opportunity to be heard received by petitioner in this case would not be sufficient to satisfy the hearing requirements of even the direct contempt statute. (*Inniss* v. *Municipal Court, supra.*)

The proceedings which took place on December 13 did not constitute a hearing for purposes of Code of Civil Procedure section 177.5. Respondent court contends that it heard petitioner's offer of proof and explanation for her actions, and then rejected them as inconsistent with respondent court's own recollection and inadequate to justify her violation of its order. However, petitioner was never given a meaningful opportunity to present her side of the story. Petitioner's counsel never attempted to make an offer of proof as to what his evidence would show. He simply attempted to obtain for petitioner the hearing to which she was entitled. Had he been made aware that his statement on December 13 would constitute all the hearing to which petitioner was entitled, he might have offered a more complete presentation of precisely what evidence he intended to produce on her behalf or requested a continuance of the "hearing" in order to obtain appropriate declarations.

Implicit in respondent court's refusal to accord petitioner a hearing is the underlying assumption that a hearing would have been to no purpose. The judge was present when the incident occurred and, thus, knew that petitioner had violated his order to remain in the courtroom without good cause or substantial justification. The judge was of the opinion that no number of witnesses would persuade him that he was in error.

Since a hearing was not held, it is difficult to speculate as to just what petitioner's evidence might have established. A hearing would not, however, necessarily have been an idle exercise. It is possible that respondent court would have concluded that it had seen or heard something incorrectly or had missed something altogether. It is possible that respondent court would have concluded that petitioner had genuinely misunderstood what respondent court required of her. If petitioner had been allowed to explain fully the exact nature of the other court's prior order to be present at 10:30 a.m. and why her presence was necessary, respondent court might have concluded that she was substantially justified in leaving the courtroom. At the least respondent court might have concluded that there was some justification for petitioner's behavior and that she was contrite, thus mitigating the amount of sanctions to be imposed.

Due process, as well as the statute itself, requires that a person against whom Code of Civil Procedure section 177.5 sanctions may be imposed be given adequate notice that such sanctions are being considered, notice as to what act or omission of the individual is the basis for the proposed sanctions, and an objective hearing at which the person is permitted to address the lawfulness of the order, the existence of the violation, and the absence of good cause or substantial justification for the violation. Petitioner did not receive such notice and opportunity to be heard. Sanctions were imposed prior to any notice or hearing. The proceedings which occurred after the

imposition of sanctions did not constitute an opportunity to be heard within the meaning of section 177.5. Petitioner was deprived of her right to due process, and sanctions were imposed in express violation of the statutory requirements for notice and opportunity to be heard.

A petition for a rehearing was denied August 23, 1991, and petitioner's application for review by the Supreme Court was denied October 17, 1991.