[No. D037465. Fourth Dist., Div. One. Dec. 24, 2001.]

In re GENE PAUL WOODHAM on Habeas Corpus.

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Paul D. Gifford, Assistant Attorney General, Barbara C. Spiegel

and Heather L. Bushman, Deputy Attorneys General, for Objector and Appellant.

Howard C. Cohen, under appointment by the Court of Appeal, for Petitioner and Respondent.

## OPINION

**KREMER, P. J.**—Objector Thomas M. Hornung, as the warden of Richard J. Donovan Correctional Facility (Donovan), appeals an order awarding monetary sanctions (Code Civ. Proc., § 177.5;[1] Cal. Rules of Court, rule 227[2]) against the Board of Prison Terms (the Board) in habeas corpus proceedings brought by petitioner Gene Paul Woodham. Hornung contends punitive sanctions were not a proper remedy under section 177.5 or rule 227 for the Board's violation of an earlier court order requiring it to respond in a timely manner to administrative appeals filed by Donovan life-term inmates including Woodham. Hornung also contends the court should have denied sanctions because the Board assertedly demonstrated good cause for its delay in responding to Woodham's administrative appeal. We affirm the order imposing sanctions.

### I

#### FACTUAL AND PROCEDURAL BACKGROUND

In April 1999, after an evidentiary hearing in consolidated proceedings on habeas corpus petitions brought by various Donovan inmates including Woodham, the superior court entered an order concluding the Board violated due process by its "unacceptable delays in processing" life-term inmates' administrative appeals.[3] The court set a 90-day time limit for the Board to answer Donovan life-term inmates' administrative appeals. In August 1999, in accord with a stipulation, the court extended such time limit to 120 days. The court also ordered that if the Board were unable to comply with the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] All further rule references are to the California Rules of Court unless otherwise specified.

[3] In its written order, the court observed: "Courts must protect prison inmates against arbitrary actions. (*In re Boag* (1973) 35 Cal.App.3d 866, 869 [111 Cal.Rptr. 226].) Furthermore, prisoners are entitled to 'viable, efficacious administrative remedies which include ["]clearly defined machinery for the submission, evaluation and resolution of complaints["] by aggrieved inmates.' (*In re Muszalski* (1975) 52 Cal.App.3d 500, 506 [125 Cal.Rptr. 286].)" The court also stated that "[t]o allow" the Board "to continue to answer appeals in an untimely manner, and with unfettered discretion, would deprive inmates of the efficacious administrative remedies to which they are entitled. (*Muszalski, supra*[,] at [p.] 506.)"

120-day time limit to answer an inmate's administrative appeal, the Board was required to give the inmate written notice that its response would be delayed.[4]

In August 1999 Woodham filed an administrative appeal involving his asserted legal right to be present at a three-year review hearing on the Board's decision denying him parole. However, in violation of the underlying order, the Board did not respond to Woodham's administrative appeal within the order's time limit or notify Woodham in writing of the delay.

In February 2000 Woodham petitioned the superior court for habeas corpus against Hornung, asserting the Board had denied Woodham due process by not timely responding to his administrative appeal. Woodham's petition sought an order requiring the Board to answer his administrative appeal. Woodham's petition also asked the court to set specific guidelines and time limits for the Board to respond to life-term inmates' administrative appeals.

In April 2000 the superior court issued an order to show cause on Woodham's habeas corpus petition. The court also granted Woodham's ensuing request for appointment of counsel and ordered the public defender's office to assign an attorney to represent Woodham on his habeas corpus petition.

In May 2000, in his return to Woodham's petition, Hornung asserted the petition was moot because the Board had responded in January 2000 to Woodham's administrative appeal by dismissing it. In June 2000, in denying Hornung's return, Woodham asserted he had not received the Board's response to his administrative appeal until April 2000.[5]

In September 2000 the superior court heard argument by counsel on Woodham's petition for habeas corpus. In October 2000, upon concluding Woodham had no right to be present at the three-year review hearing on the Board's decision denying him parole, the court entered an order denying Woodham's habeas corpus petition. In doing so, the court noted that the remedies available to Woodham for the Board's violation of the underlying order's time limit for responding to his administrative appeal were limited and that the untimeliness of the Board's response had not directly prejudiced Woodham. However, in concluding that the Board's response to Woodham's

---

[4]We may refer to the court's orders of April and August 1999 collectively as the "underlying order."

[5]As the superior court ultimately concluded in its written order imposing sanctions against the Board: "The actual date of receipt is irrelevant, since it is beyond the 120-day time period set forth in the [underlying] order."

administrative appeal was in fact untimely, the court expressly found "unpersuasive" the argument by Hornung that the Board's failure to make a timely response was attributable to a backlog of appeals and thus not willful. Hence, the court ordered Hornung to show cause why sanctions should not be imposed under section 177.5 and rule 227 for the Board's failure to comply with the underlying order mandating a timely response to inmates' administrative appeals.

In November 2000 the superior court held a hearing on sanctions. In December 2000 the court entered an order finding sanctions were appropriate and imposing $1,500 sanctions against the Board payable to the County of San Diego (County). (§ 177.5.) Hornung appeals the sanctions order.

## II

### DISCUSSION

The court based its imposition of sanctions on section 177.5 and rule 227, "each of which requires a knowing violation of a valid order of the court without good cause or substantial justification." (*Winikow v. Superior Court* (2000) 82 Cal.App.4th 719, 726 [98 Cal.Rptr.2d 413].)[6] Seeking reversal of the sanctions order, Hornung contends monetary sanctions were not appropriate here because requiring the Board to pay sanctions assertedly did not serve the compensatory intent of section 177.5 or rule 227 since the ultimate hearing on Woodham's habeas corpus petition in this case was purportedly "inevitable and necessary." Further, asserting that the "spirit" of the underlying order was not violated even if its "letter" was violated "in a

---

[6]Section 177.5 provides: "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the county in which the judicial officer is located, for any violation of a lawful court order by a person, done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court. For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both. [¶] Sanctions pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or on the court's own motion, after notice and opportunity to be heard. An order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

Rule 227 provides: "The failure of any person to comply with these rules, local rules, or order of the court, unless good cause is shown, or failure to participate in good faith in any conference those rules or an order of the court require, is an unlawful interference with the proceedings of the court. The court may order the person at fault to pay the opposing party's reasonable expenses and counsel fees and to reimburse or make payment to the county, may order an appropriate change in the calendar status of the action, and for failure to comply with local rules may impose sanctions authorized under section 575.2 of the Code of Civil Procedure and under section 68608(b) of the Government Code, in addition to any other sanction permitted by law."

technical sense," Hornung also contends the court erred in concluding that good cause was not shown for the Board's failure to respond to Woodham's administrative appeal within such order's time limit.

 The "imposition of sanctions, monetary or otherwise, is within the discretion of the trial court. That discretion must be exercised in a reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards as adapted to current circumstances." (*Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 501 [256 Cal.Rptr. 296]; accord, *Winikow v. Superior Court, supra*, 82 Cal.App.4th at p. 726; *People v. Tabb* (1991) 228 Cal.App.3d 1300, 1311 [279 Cal.Rptr. 480]; *People v. Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].[7]) "When the question on appeal is whether the trial court has abused its discretion, the showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion. An appellate tribunal is not authorized to substitute its judgment for that of the trial judge. [Citation.] A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Stewart, supra*, 171 Cal.App.3d at p. 65.) As we shall explain, in imposing monetary sanctions against the Board on this record, the superior court exercised its discretion in a reasonable manner in accord with the purposes authorized by section 177.5. (*Winikow*, at p. 726; *Tabb*, at p. 1311; *Moyal*, at p. 501; *Stewart*, at p. 65.)

A

*Sanctions Award Was Statutorily Authorized*

In *Moyal v. Lanphear, supra*, 208 Cal.App.3d at page 499, we observed that "section 177.5 provides the court has the power to impose reasonable monetary sanctions, payable to the county in which the court is located, for any violation of a lawful court order. The apparent purpose of this enactment is to compensate public agencies for the cost of unnecessary hearings." (See also *Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075, 1080 [283

---

[7]The "term judicial discretion implies the absence of arbitrary determination, capricious disposition, or whimsical thinking. [Citation.] The term means the exercise of discriminating judgment within the bounds of reason. To exercise judicial discretion, a court must know and consider all material facts and all legal principles essential to an informed, intelligent, and just decision." (*People v. Stewart, supra*, 171 Cal.App.3d at p. 65.)

Cal.Rptr. 857].)[8] Relying on *Moyal*, Hornung characterizes the intent behind section 177.5 as compensatory in nature rather than punitive and concludes the sanctions award here should be reversed as not serving a compensatory purpose but instead imposed simply to punish the Board. However, the statute's scope was not intended to be limited to compensatory sanctions but instead was contemplated to authorize punitive sanctions as well. (See *People v. Tabb, supra*, 228 Cal.App.3d at pp. 1306, 1309-1310; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended May 3, 1982, p. 2 ["purpose of the bill is to broaden the types of misbehavior that a court may punish"]; Enrolled Bill Rep., Assem. Bill No. 3573 (1982-1983 Reg. Sess.) Sept. 29, 1982 ["it is not unreasonable to give the courts additional discretionary authority to deter misconduct"].)

Moreover, in any event, this record belies Hornung's contention that the sanctions award against the Board did not constitute compensation to the County for an unnecessary hearing. In particular, Hornung contends that even if the Board had timely responded to Woodham's administrative appeal, the County's involvement in a hearing on Woodham's habeas corpus petition (presumably by providing appointed legal counsel and/or a judicial forum) would nevertheless have necessarily ensued as required for the adjudication of the issue of the merits of Woodham's administrative appeal, an issue characterized by Hornung as forming a basis of such petition. However, the record indicates that Woodham's petition for habeas corpus focused not on the merits of his administrative appeal involving his alleged legal right to be present at the three-year review hearing but instead on the Board's alleged violation of his due process rights by not answering such appeal. As noted, Woodham's petition sought an order requiring the Board to answer his appeal and also asked the court to set specific guidelines and time limits for the Board to respond to life-term inmates' appeals. Further, in issuing its order to show cause why the relief sought by Woodham should not be granted, the superior court stated it appeared that Woodham had "filed the instant Petition in order to request that this court compel the [Board] to respond to his appeal." In his return to Woodham's petition, Hornung denied the Board had failed to respond, asserted the issues raised in the petition were moot and argued that Woodham had not exhausted his administrative remedies. Although at the September 2000 hearing on Woodham's petition the court and counsel mentioned the merits of

[8]"Section 177.5 was enacted in 1982 at the request of the superior courts of Los Angeles and San Diego Counties. [Citation.] According to the author of the bill and its proponents, section 177.5 was enacted to 'insure all parties are present and prepared for court appearances' and 'to help eliminate unnecessary delays in civil proceedings.' " (*Seykora v. Superior Court, supra*, 232 Cal.App.3d at p. 1080.) In *People v. Tabb, supra*, 228 Cal.App.3d 1300, the appellate court held that section 177.5 applied as well in criminal proceedings. (*Seykora*, at p. 1080, fn. 3.)

Woodham's administrative appeal involving his alleged legal right to be present at the three-year review hearing, the bulk of the discussion at such hearing focused on the issue of the Board's obligation to respond timely to Woodham's administrative appeal. Additionally, in its order denying Woodham's petition, the court stated that based upon the lack of response to his administrative appeal, Woodham had taken the time to file such petition and requested that an attorney be appointed to assist him once an order to show cause issued. In granting Woodham's request for appointment of counsel, the court ordered the public defender's office to assign counsel to represent Woodham on his petition. Finally, at the sanctions hearing, the court asked Woodham's counsel for the number of attorney hours expended. The court also stated it was not appropriate for the Board to shift to the courts the burden of litigating habeas corpus matters that could have been avoided by appropriate timely responses to life-term inmates' administrative appeals.

In sum, the superior court properly imposed sanctions on the Board to compensate the County for unnecessary litigation. Hornung's contention that a hearing on a habeas corpus petition brought by Woodham would have been "inevitable and necessary" even if the Board had timely answered Woodham's administrative appeal is speculation. Specifically, if the Board had responded timely, it is by no means certain that Woodham would have filed a habeas corpus petition based solely on the issue whether he had the legal right to be present at the three-year review hearing or that the superior court would have issued an order to show cause requiring a hearing to consider only such legal issue. Further, even if a hearing had been held solely on that issue, appointed counsel and the court would not have been required to consider the factual circumstances surrounding the Board's violation of the underlying order but only the narrow legal question whether Woodham had the right to be present at the review hearing. Accordingly, on this record, imposition of sanctions against the Board for its violation of the underlying order was consistent with the purpose of section 177.5. (*Winikow v. Superior Court, supra,* 82 Cal.App.4th at p. 726; *People v. Tabb, supra,* 228 Cal.App.3d at pp. 1306, 1309-1311; *Moyal v. Lanphear, supra,* 208 Cal.App.3d at p. 501.)

B

*Sufficient Factual Basis for Sanctions Award*

As noted, for purposes of the imposition of sanctions, both section 177.5 and rule 227 require "a knowing violation of a valid order of the court without good cause or substantial justification." (*Winikow v. Superior Court,*

*supra,* 82 Cal.App.4th at p. 726.) Thus, Hornung contends that even if the sanctions were imposed to compensate the County for an unnecessary hearing, the sanctions order should nevertheless be reversed because the Board assertedly showed good cause for its violation of the underlying order occasioned by its delay in responding to Woodham's administrative appeal.

Section 177.5 "was designed to supplement section 128.5, which authorizes a trial court to order a party or a party's attorney, or both, to pay to another party reasonable expenses incurred by that party as a result of bad faith actions or tactics which are frivolous or solely intended to cause unnecessary delay. However, unlike section 128.5, which requires the court to make a subjective determination of a party's intentions, section 177.5 requires only that the sanctioned party violate lawful court order 'without good cause or substantial justification.' " (*Seykora v. Superior Court, supra,* 232 Cal.App.3d at p. 1080.) In doing so, "section 177.5 does not even require a willful violation, but merely one committed . . . without a valid excuse." (*Id.* at p. 1081; accord, *People v. Tabb, supra,* 228 Cal.App.3d at p. 1311.)

Hornung contends compliance with the underlying order with respect to responding to Woodham's administrative appeal was difficult because during the relevant time period a state senator was conducting "legislative hearings on life parole consideration proceedings" that assertedly quadrupled the number of administrative appeals filed and caused a significant backlog in the Board's processing of such appeals. Hornung also contends that despite the backlog, Woodham's administrative appeal was the only appeal by a Donovan life-term inmate not answered within the underlying order's time limit. Hornung further contends that the delay in processing Woodham's administrative appeal resulted from an inadvertent error by a new staff member of the Board in mistakenly categorizing such appeal as a parole revocation. However, on this record, the superior court could reasonably conclude the Board violated the underlying order without a valid excuse. (*Seykora v. Superior Court, supra,* 232 Cal.App.3d at p. 1081; *People v. Tabb, supra,* 228 Cal.App.3d at p. 1311; *People v. Stewart, supra,* 171 Cal.App.3d at p. 65.)

Hornung's appellate contentions track those he made in the superior court in opposing the order to show cause why sanctions should not be imposed.[9] In essence, the purported administrative error and the asserted increase in the

---

[9]In opposing sanctions in the superior court, Hornung did not deny that the Board's response to Woodham's administrative appeal was untimely. However, Hornung asserted that the " 'vast majority' " of such appeals by Donovan inmates were answered in timely fashion and Woodham's case was the exception. Hornung also asserted there was good cause and

number of administrative appeals filed near the same time as Woodham's constituted the only excuses offered by Hornung for the Board's failure to comply with the underlying order's time limit for answering Woodham's appeal. In finding sanctions to be appropriate under section 177.5 and rule 227, the superior court properly concluded those excuses did not establish that the Board had good cause or substantial justification for violating the underlying order. In doing so, the superior court reasonably found that the Board had knowledge of the underlying order, the Board acknowledged its failure to comply with the underlying order, the Board violated the underlying order's requirement to respond timely to Woodham's administrative appeal, and the Board also violated the underlying order's requirement to notify Woodham in writing of its inability to comply with the order's time limit. In seeking to demonstrate good cause or substantial justification for those violations, Hornung presented facts that, at most, merely afforded "an opportunity for a difference of opinion." (*People v. Stewart, supra,* 171 Cal.App.3d at p. 65.) Under these circumstances, the court reasonably rejected Hornung's proffered explanations as not demonstrating a valid excuse. (*Seykora v. Superior Court, supra,* 232 Cal.App.3d at p. 1081; *People v. Tabb, supra,* 228 Cal.App.3d at p. 1311; *Stewart,* at p. 65.)[10] Accordingly, since Hornung has not shown the court abused its discretion in imposing monetary sanctions against the Board, we do not disturb the sanctions award. (*People v. Stewart, supra,* 171 Cal.App.3d at p. 65.)

### III

### DISPOSITION

The order is affirmed.

Huffman, J., and O'Rourke, J., concurred.

---

substantial justification for the Board's violation of the underlying order because of administrative error and the increased number of administrative appeals filed about the same time as Woodham's.

[10]As noted, in concluding in its earlier order denying Woodham's habeas corpus petition that the Board's response to Woodham's administrative appeal was untimely, the court had expressly found "unpersuasive" Hornung's argument that the Board's failure to respond timely was attributable to a backlog of appeals and thus not willful.