Filed 5/24/21

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| | |
|---|---|
| THE PEOPLE, | C088852 |
| Plaintiff, | (Super. Ct. No. MAN-CR-FE-2017-00010388) |
| v. | |
| LUIS CARLOS AGUIRRE, | |
| Defendant and Respondent; | |
| STATE DEPARTMENT OF STATE HOSPITALS, | |
| Objector and Appellant. | |
| [And 50 other cases.*] | |

---

* *People v. Avila* (Nos. LOD-CR-FE-2017-0013589, MAN-CR-FE-2017-0015474); *People v. Ayala* (No. STK-CR-FE-2017-0012142); *People v. Barrales* (No. STK-CR-FE-2016-0016094); *People v. Benipal* (Nos. MAN-CR-FE-2015-0016626, MAN-CR-MI-2015-0004023, MAN-CR-MDV-2016-0014533, MAN-CR-MI-2015-0003729); *People v. Black* (No. MAN-CR-FECOD-2016-0012243); *People v. Brown* (No. STK-CR-FER-2017-0008439); *People v. Caporusso* (No. LOD-CR-FE-2018-0000639); *People v. Carpenter* (No. STK-CR-FER-2018-0002839); *People v. Catalano* (Nos. MAN-CR-FE-

1

APPEAL from the omnibus order for sanctions of the Superior Court of San Joaquin County, Richard A. Vlavianos, Judge.  Affirmed.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Senior Assistant Attorney General, Gregory D. Brown, Supervising Deputy Attorney General, Darrell W. Spence and Kevin L. Quade, Deputy Attorneys General, for Objector and Appellant.

Diane Nichols, under appointment by the Court of Appeal, for Defendants and Respondents.

The State Department of State Hospitals (Department) oversees state hospitals that provide treatment to individuals facing criminal charges who are found incompetent to stand trial (IST).  In separate criminal cases, the trial court found 37 defendants IST and ordered the Department to admit them within 60 days of the receipt of an informational packet.  The Department failed to timely admit 31 of the 37 defendants.  These

2017-0015001, MAN-CR-FE-2017-0006107, MAN-CR-FE-2014-0000622, MAN-CR-FE-2015-0002368); *People v. Chum* (No. STK-CR-FE-2017-0013624); *People v. Crenshaw* (No. STK-CR-FE-2016-0015271); *People v. Crites* (No. STK-CR-FER-2017-0004240); *People v. Davis* (No. MAN-CR-FE-2017-0010360); *People v. Day* (No. STK-CR-FE-2016-0013228; *People v. Edwards* (No. STK-CR-FE-2016-0007645); *People v. Furgerson* (No. STK-CR-FE-2016-0009675); *People v. Garduno* (No. MAN-CR-FE-2017-0013068); *People v. George* (No. STK-CR-FE-2016-0006472); *People v. Glass* (No. MAN-CR-FE-2015-0002266); *People v. Guilford* (No. STK-CR-FE-2016-0010040); *People v. Harris* (No. STK-CR-FER-2017-0005289); *People v. Jackson* (No. STK-CR-FE-2017-0013355); *People v. Johnson* (No. STK-CR-FER-2016-0016043); *People v. Lott* (Nos.STK-CR-FER-2017-0005145, STK-CR-FE-2016-0016085); *People v. McDonald* (No. STK-CR-FE-COD-2015-0007343); *People v. Moppins* (No. STK-CR-FER-2016-0002241); *People v. Nawabi* (Nos. MAN-CR-FE-2017-0000935, MAN-CR-FE-2016-0000465, MAN-CR-FE-2014-0000414, MAN-CR-FE-2014-0000684, MAN-CR-FE-2018-0002301); *People v. Newton* (Nos. STK-CR-FE-2013-0007996, STK-CR-FE-2016-0013154); *People v. Palma* (No. STK-CR-FE-2016-0015091); *People v. Poindexter* (STK-CR-FE-2017-14999); *People v. Ramirez* (Nos. STK-CR-FDV-2017-0013745, STK-CR-FDV-2017-0003906); *People v. Riberal* (No. STK-CR-FER-2018-000785); *People v. Steeley* (No. STK-CR-FDV-2018-0002926); *People v. White* (No. STK-CR-FE-2016-0015469); *People v. Wilhite* (No. STK-CR-FER-2016-0014229); and *People v. Williams* (No. STK CR-FE-2017-0015101).

defendants separately sought sanctions against the Department pursuant to Code of Civil Procedure section 177.5, claiming violation of the court's order.[1] The trial court found the Department in violation of the order, and imposed monetary sanctions pursuant to section 177.5, which provides in relevant part: "A judicial officer shall have the power to impose reasonable money sanctions . . . for any violation of a lawful court order by a person, done without good cause or substantial justification. . . . For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both."

The Department appeals. It contends the trial court was not authorized to impose sanctions against it under section 177.5. Additionally, it claims good cause or substantial justification for violating the order even assuming the court could impose sanctions under section 177.5. We disagree with the Department's arguments and affirm.

## FACTS AND PROCEEDINGS

*Statutory Background*

A court may not try or sentence a defendant in a criminal proceeding while the defendant is incompetent. (Pen. Code, § 1367, subd. (a).) If there is a doubt as to the defendant's competency to stand trial, criminal proceedings are suspended, and the defendant's mental competence is determined in a hearing. (*Id.*, § 1368, subds. (a)-(c).) The Department has no role in competency proceedings and does not receive prior notice of them. (*Id.*, §§ 1367-1370.)

If the defendant is found IST, the court shall commit the defendant to the Department. (Pen. Code, § 1370, subd. (a)(5).) Prior to the defendant's admission, the court must provide the Department with a "1370 packet," which includes copies of the commitment order, criminal history information, arrest reports, psychiatric examination reports, and medical records. (*Id.*, § 1370, subd. (a)(3).) The Department uses the

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

3

information in the packet to determine the appropriate placement for the defendant. (*Id.*, § 1370, subd. (a)(2)(A).) The Department generally admits each individual according to the date the court committed the defendant to the Department. (Regs., tit. 9, § 4710, subd. (a).)

There is no statutory requirement setting a deadline for admission of an IST defendant to the Department after issuance of a commitment order. However, the Department is required to report the defendant's progress toward recovery to the court within 90 days of commitment. (Pen. Code, § 1370, subd. (b)(1).) Until the court declares the defendant restored to competency, the underlying criminal proceeding is suspended. (*Id.*, § 1370, subd. (a)(1).)

*Increase in IST Defendant Referrals*

Referral rates of IST defendants to the Department have substantially increased since 2013, and the Department's admissions have increased since 2010. Each state hospital overseen by the Department has reached its capacity, resulting in a waitlist for admission to a state hospital. As of August 13, 2018, the waitlist for admission to a state hospital, a jail-based competency treatment program, or the admission, evaluation, and stabilization center included 754 patients.

Between February 2014 and August 2018, the Department increased its total IST defendant capacity by 677 beds, and the Department has taken steps to improve the efficiency of the systems for placing and admitting IST defendants to maximize the utilization of available treatment beds. The 2018-2019 Governor's Budget also included additional funding for pretrial diversion programs aimed toward decreasing IST defendant referrals to the Department.

*Procedural Background*

Between September 2016 and May 2018, 37 defendants facing charges in unrelated criminal cases were found IST by the Superior Court of San Joaquin County under Penal Code section 1370. Each defendant was referred to the Community Program

4

Director, San Joaquin County Mental Health, for a placement report and recommendations. The trial court ordered each defendant committed to the Department within approximately 60 days of receipt of the commitment packet from the court and the San Joaquin County Sheriff, and it ordered the sheriff to deliver each defendant to the Department.[2] The court also ordered the Department to provide its 90-day report on specific dates, typically approximately 90 days from the date of the order. The court's order did not mention or account for the waitlist for admission to state hospitals. The Department was not a party to the competency proceedings, and the record does not reflect that the Department was aware of the proceedings before receiving the subject commitment orders.

From January to June 2018, each defendant filed a request for section 177.5 sanctions against the Department. The requests alleged the Department failed to comply with the trial court's order to admit each defendant on a timely basis and requested that the court issue an order to show cause why sanctions should not be imposed. The court issued the order to show cause.

The Department filed a motion to dismiss the orders to show cause; it argued the court had no authority to issue sanctions against the Department under section 177.5 because the statute only permits sanctions against a witness, a party, or a party's attorney, and the Department did not fall within any of those categories.

At the first hearing on the sanctions, the trial court heard argument as to all defendants and determined the Department could be sanctioned under section 177.5. The court found that the Department's statutory obligation to provide information to the court following commitment made the Department a witness to the proceedings. The court also found the Department "borders on becoming a party" following the commitment

---

[2] The trial court ordered that the defendant be admitted by a specific date in each case, which varied slightly.

proceedings due to the Department's statutory obligations. Even if the Department were neither a witness nor a party, the court found the Department was "intended to be included in [section] 177.5."

The trial court found the Department had violated its orders except as to four defendants who had been timely admitted, and set a second hearing. At the second hearing, the court imposed sanctions against the Department in the amount of $500 for each defendant admitted from 61 to 75 days after the date of providing the Penal Code section 1370 packet, $1,000 for each defendant admitted between 76 and 90 days after providing the packet, and $1,500 for each defendant admitted more than 90 days after providing the packet.

The trial court subsequently issued an omnibus order imposing sanctions. The total amount of sanctions was $34,000 in 31 of the 37 matters. The court reiterated its conclusion that the Department could be sanctioned under section 177.5 because the Department is "at least a real party in interest" and a witness within the meaning of section 177.5.

The trial court rejected the Department's claims that lack of funding and bed space constituted good cause or substantial justification for its failure to comply with the court's orders. The court recognized the Department is an agency of the State of California, and any lack of funding is a conscious budgetary decision made by the State. The court also rejected the Department's argument its efforts to solve the problem of the delay in admission constitutes good cause or substantial justification for violating the court's order. The court noted the Department's ongoing efforts do not help the individuals whose due process rights the Department already violated, and despite the Department's ongoing efforts, admission delays are only slightly improved. Indeed, the court noted: "The Department touts improvements but the fact remains that as of the date of this order most defendants are waiting well beyond the 60 day order (from the providing of the packet); and do not have a meaningful report within the time period

6

mandated by Penal Code [s]ection 1370.  The Department continues to violate nearly every 60-day admit-by order set by the Court, and Penal Code [s]ection 1370, by a considerable margin."

The Department timely appeals from the court's order.

## DISCUSSION

### I

### *Sanctions Against the Department*

The Department asserts the trial court was not authorized to impose sanctions against it under section 177.5, because it was not a "person" within the meaning of the statute and, alternatively, that there was good cause for its failure to obey the order.

The Department emphasizes that the statute defines the "person" who may be sanctioned as "includ[ing] a witness, a party, a party's attorney, or both" and contends the plain language and legislative history of section 177.5 demonstrate the statute was therefore intended to authorize sanctions *only* against witnesses, parties, and parties' attorneys.  The Department contends it played none of these roles in this case.

The Department raised almost identical arguments in two recent cases, which were rejected by the Court of Appeal, First Appellate District, Division Four, in *People v. Hooper* (2019) 40 Cal.App.5th 685 (*Hooper*) and by the Court of Appeal, Second Appellate District, Division One, in *People v. Kareem A.* (2020) 46 Cal.App.5th 58 (*Kareem A.*).  As we will explain, we agree with the conclusions reached in those cases.

A.  *Standard of Review*

"We review orders imposing sanctions for abuse of discretion.  [Citation.]  The trial court must exercise its discretion in a 'reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards.'  [Citation.]  A mere difference of opinion between the appellate and trial courts is insufficient to warrant reversal.  [Citation.]  Questions of law, on the other hand, are subject to de novo review.  [Citation.]  When a trial court relies on a statute as authority to award sanctions,

7

we review the interpretation of the statute de novo.  [Citation.]" (*Hooper*, *supra*, 40 Cal.App.5th at pp. 691-692.)

 B. *Principles of Statutory Construction*

 "In analyzing the scope of . . . section 177.5, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.'  [Citation.]  ' "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.  A construction making some words surplusage is to be avoided.  The words of the statute must be construed in context, keeping in mind the statutory purpose . . . ." '  [Citation.] Our goal is to ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' "  (*Kareem A.*, *supra*, 46 Cal.App.5th at p. 71.)

 " 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.'  [Citations.]"  (*Imperial Merchant Services., Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388.)  "A statute is regarded as ambiguous if it is capable of two constructions, both of which are reasonable.  [Citations.]"  (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776.)  "When . . . a statute is ambiguous, we typically consider evidence of the Legislature's intent beyond the words of the statute. The court may examine a variety of extrinsic aids, including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality, 'in an attempt to ascertain the most reasonable interpretation of the measure.'  [Citations.]"  (*Ibid.*)

 " '[I]t is the language of the statute itself that has successfully braved the legislative gauntlet.  It is that language which has been lobbied for, lobbied against,

8

studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed "into law" by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's "legislative history." ' [Citations.] Even assuming statutory ambiguity has been identified, '[w]e rely on the legislative history of an ambiguous statute as dispositive only when that history is itself unambiguous.' [Citations.]" (*Siskiyou County Farm Bureau v. Department of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 439-440, as modified on denial of reh'g (June 26, 2015).)

C. *Plain Language of Section 177.5*

As it did in *Hooper* and *Kareem A.*, the Department relies on *Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443 to support its argument that the plain language of section 177.5 limits the trial court's authority to impose sanctions to witnesses, parties, and parties' attorneys. *Vidrio* involved an underlying lawsuit between an insured and an injured third party. The appellate court concluded the insured's insurer--not a party to the lawsuit--could not be sanctioned under section 177.5 for its purported failure to participate in good faith in a mandatory settlement conference. The court based its decision on three grounds. First, section 177.5 empowers a court to impose monetary sanctions for violation of a lawful court order without good cause, and the insurer did not violate a court order in that case. (*Vidrio*, at p. 1455.) Second, the court quoted section 177.5 and concluded without any analysis the nonparty insurer was not a "person" subject to sanctions under section 177.5 because it was not " 'a witness, a party, a party's attorney, or both.' " (*Vidrio*, at p. 1455.) Third, the court concluded the trial court improperly imposed sanctions both as in excess of the maximum $1,500 and by imposing a monetary sanction payable to plaintiff's counsel. (*Ibid.*)

9

Both *Hooper*, *supra*, 40 Cal.App.5th 685, and *Kareem A.*, *supra*, 46 Cal.App.5th 58 disagreed with *Vidrio*. Each opinion first recognized that unlike the insurer in *Vidrio*, the Department violated court orders. (*Hooper*, at p. 692; *Kareem A.*, at p. 71.) Both opinions also disagreed with *Vidrio*'s conclusion that section 177.5 only authorizes sanctions against the specific categories of "person[s]" listed in the statute, noting that *Vidrio* did not analyze the statute's use of the word "includes" or its legislative history and purpose. (*Hooper*, at pp. 692-693; *Kareem A.*, at p. 72.) The Department contends *Vidrio*'s complete lack of analysis is a "feature, not a bug," because it demonstrates the statute's language is clear, unambiguous, and restrictive. But it is *not* clear to us that *Vidrio* concluded the statutory language unambiguously established an exhaustive list of persons allowed to be sanctioned under the statute. The *Vidrio* court did not explicitly reach this conclusion and did not support its conclusory explanation that the insurer was not a "person" with any analysis.

Even assuming *Vidrio* is properly read to reach and support such a conclusion, we disagree, for reasons we now explain.

At the outset, we agree with *Kareem A.* and *Hooper* that the plain language of section 177.5, that a person "includes a witness, a party, a party's attorney, or both," could be read to provide a non-exhaustive list of persons who may be sanctioned under the statute. Like *Kareem A.*, we begin "by noting that our Supreme Court has held that 'the word "including" in a statute is "ordinarily a term of enlargement rather than limitation." ' " (*Kareem A.* , *supra*, 46 Cal.App.5th at p. 72; *Hooper*, *supra*, 40 Cal.App.5th at p. 692 ["[§] 177.5 merely states that the term 'includes' a witness, a party, a party's attorney, or both, indicating that the subsequent examples provide guidance as to who may be considered 'a person' "].) "The word 'includes' " for purposes of statutory construction "is not synonymous with 'means' or 'constitutes." (*Persky v. Bushey* (2018) 21 Cal.App.5th 810, 825.) "[W]here the word 'include' is used to refer to specified items, it may be expanded to cover other items. [Citation.]" (*Rea v. Blue*

10

*Shield of California* (2014) 226 Cal.App.4th 1209, 1227 (*Rea*), as modified on denial of reh'g (July 9, 2014).)[3]

Not only are the terms "including" or "includes" typically words of enlargement (see *Rea*, *supra*, 226 Cal.App.4th at p. 1228 ["Both 'includes' and 'including' are words of enlargement"]), but "[b]y its terms, the statute does not purport to exclude any entity not specifically listed—as it would, for example, if it stated that the term 'person' is 'defined as,' 'means,' or 'includes only' a witness, a party, a party's attorney, or both." (*Hooper*, *supra*, 40 Cal.App.5th at pp. 692-693.) Additionally, had the Legislature intended to establish an exhaustive list of "person[s]" the court may sanction under the statute, it could have easily dispensed with the word "person" altogether and drafted the first sentence of the statute to read: "A judicial officer shall have the power to impose reasonable money sanctions . . . for any violation of a lawful court order by a ~~person~~ *witness, a party, a party's attorney, or both*, done without good cause or substantial justification." Accordingly, we agree with *Hooper* and *Kareem A.* that it is reasonable to construe the word "person" in section 177.5 in terms of a non-exhaustive list of categories of persons the court may sanction under the statute.

However, we recognize that the term "includes" is not necessarily a term of enlargement in all instances. Whether the term "includes" encompasses things not specified in the statute is a question of legislative intent. (*Hassan v. Mercy American*

---

[3] We observe that section 17, subdivision (b) provides: "As used in this code, the following words have the following meanings, unless otherwise apparent from the context: [¶] . . . [¶] (6) 'Person' includes a corporation as well as a natural person." The term "includes" in section 17 is ordinarily a term of enlargement and has been interpreted broadly. (See *People v. Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 639; *Oil Workers Intl. Union v. Superior Court* (1951) 103 Cal.App.2d 512, 570-571 [unincorporated association in a person].)

*River Hospital* (2003) 31 Cal.4th 709, 717.)  Accordingly, we analyze the statute's legislative history to determine its intent and purpose.**4**

D.  *Legislative History*

At the Department's request, we have taken judicial notice of numerous documents of section 177.5's legislative history.  The original draft of Assembly Bill No. 3573 (1981-1982 Reg. Sess.) amended section 177 to include what would later become section 177.5 (added by Stats. 1982, ch. 1564, § 1).  When it was introduced, the bill was described in part as follows:  "This bill would expressly authorize judges to impose money sanctions payable to the county for specified acts which unreasonably or unlawfully interfere with the proceedings or processes of the court." (Legis. Counsel's Dig., Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as introduced Mar. 15, 1982.)  The bill as introduced read in part:  "To impose money sanctions, notwithstanding any other provision of law, payable to the county in which the judicial officer is located or to a party for acts by a person involved in any proceeding which unreasonably or unlawfully interferes with the proceedings or processes of the court.  Person includes, *but is not limited to*, a party, a party's attorney, or both." (*Id.*, § 1, italics added.)

----

**4** The Department contends the rule of construction known as *ejusdem generis* supports its position that the list of persons subject to sanctions is presumed to be exhaustive.  It does not.  According to that rule, " 'where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated.  The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' [Citations.]" (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10.)  But the rule does not require that the general word is expressly limited to the enumerated list; rather, the rule only requires that any unenumerated person be " ' " 'of the same kind' " ' " as the enumerated persons. (*People v. Arias* (2008) 45 Cal.4th 169, 180.)  Accordingly, the doctrine of *ejusdem generis* supports only the position that "persons" in section 177.5 is limited to the "same kind" of persons listed in the statute.

The Legislature amended the bill's definition of "person" to read: "For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both." (Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended May 3, 1982.) The change appeared to result from the Legislature's concern that the definition of "person" as defined by the bill "could include people not directly involved in a specific action (e.g. reporters, demonstrators or courtroom observers)." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Apr. 21, 1982, p. 3.) The Legislature suggested that the bill "be limited to people directly involved in a proceeding before the court (e.g., parties, attorney's [*sic*], witnesses, jurors)." (*Ibid.*)

The bill's purpose was stated in various documents throughout the legislative process. The Assembly Committee on the Judiciary described the bill's intent as "to broaden the authority of judges to impose money sanctions against persons whose acts interfere with court proceedings and processes." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Apr. 21, 1982, p. 1.)

The Assembly Committee on the Judiciary described the bill: "This bill would add to the statutorily recognized powers of judicial officers by authorizing judges to impose money sanctions not to exceed $1,500 against a party, a party's attorney or a witness for violation of a lawful court order. The money would be payable to the county or a party. Sanctions would not be imposed if good cause for the violation was shown. A notice and hearing would be required prior to the sanctions being imposed." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Apr. 21, 1982, p. 1.) Staff comments provided the purpose of the bill according to the Los Angeles Superior Court, the source of the bill: "existing law is inadequate in affording judges the authority to ensure the orderly and efficient operation of the courts. The source suggests that contempt proceedings are often too cumbersome, costly and time consuming to prevent parties and their attorneys from using unreasonable tactics aimed at delay. Further, the source argues that without the specific statutory authority to

13

impose the money sanctions provided by this bill, judges will continue to be at a loss to implement innovative methods (e.g., structured pre-trial conference) designed to reduce delay and reduce backlogs." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Apr. 21, 1982, p. 1.)

The Senate Committee on the Judiciary described the purpose of the bill in part: "The purpose of the bill is to broaden the types of misbehavior that a court may punish, increase the amount of the sanction that may be imposed, and provide for limited indemnification of parties for losses due to the misbehavior of their opponents." (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended May 3, 1982, p. 2.) A comment in the committee's analysis described the scope of the sanctions in part: "The bill would authorize judges in both criminal and civil cases, to fine a party, his attorney, or a witness up to $1,500 for violating a lawful court order whether or not the violation occurred in or out of court." (Sen. Com. on Judiciary, com. on Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended May 3, 1982, p. 2.) A similar description in the enrolled bill report to the Governor described the bill as allowing the court to impose sanctions "for any violation of a lawful order by a witness, party, or party's attorney." (Dept. of Finance, Enrolled Bill Rep. on Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Aug. 11, 1982.)

The Legislative Digest summarized the bill: "Existing statutory law authorizes trial courts to order a party or the party's attorney to pay any reasonable expenses incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. [¶] This bill, in addition, would authorize a judicial officer to impose money sanctions, not exceeding $1,500 and upon notice and an opportunity to be heard, for any violation of a lawful court order by a witness, a party, or a party's attorney." (Legis. Counsel's Dig., Assem. Bill No. 3573 (1981-1982 Reg. Sess.) Stats. 1982, Summary Dig., p. 583.)

14

E.  *Analysis*

The Department contends the Legislature's decision to amend the definition of "person" by deleting "but not limited to" after "including" and adding "witness" to the definition of "person" conclusively demonstrates the Legislature's intent to create an exhaustive, rather than exemplary, list of persons subject to sanctions under section 177.5.  This argument was rejected in *Hooper*, *supra*, 40 Cal.App.5th at page 693, and *Kareem A.*, *supra*, 46 Cal.App.5th at page 73.  In *Hooper* the court characterized the deleted "but is not limited to" language as "seemingly redundant" and noted the Legislature did not specify the reason for deleting those words.  (*Hooper*, *supra*, 40 Cal.App.5th at p. 693.)  The court observed the Legislature was concerned that such a broadly worded statute would allow sanctions against " 'people not directly involved' in an action, such as 'reporters, demonstrators, or courtroom observers.' " (*Ibid*., quoting Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Apr. 29, 1982.)  The court concluded, "in light of [the Department's] statutory obligation in the criminal justice process relating to IST defendants, [the Department] resembles a party far more than it resembles one 'not directly involved' in an action, such as a reporter, demonstrator, or courtroom observer.  Indeed, because Penal Code section 1367 bars courts from trying and sentencing IST defendants, [the Department's] provision of timely treatment plays an essential auxiliary role in the proper functioning of the criminal justice system." (*Ibid.*)

The court in *Kareem A.* similarly recognized the amendments to the definition of "person" reflected the Legislature's concern that the bill as written would allow the court to sanction courtroom attendees not involved in the proceedings, as opposed to courtroom participants directly involved in the proceedings before the court.  (*Kareem A.*, *supra*, 46 Cal.App.5th at p. 73, citing Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as introduced Mar. 15, 1982.)  The court concluded:  "The Legislature's intent was accordingly to allow judicial officers the ability to sanction

15

'people directly involved in a proceeding before the court.' (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as introduced Mar. 15, 1982.) The fact that a person before the court does not fit squarely into the definition of a party, a party's attorney, or a witness does not exclude them from being a person directly involved in a proceeding. Had the Legislature wanted to limit 'person' to only those three categories, it would have omitted the word 'includes' altogether." (*Ibid.*)

The Department contends we should not credit these authorities because they were wrongly decided. It contends *Hooper* failed to sufficiently articulate its reasoning, incorrectly expanded the scope of the court's ability to impose sanctions without establishing the limits to that authority, and incorrectly concluded "but is not limited to" is redundant to "includes." Similarly, the Department asserts the court in *Kareem A.* failed to meaningfully analyze the legislative purpose of deleting "but is not limited to" and adding "witness" to the definition of "person"; it contends the amendment conclusively demonstrated the Legislature's intent to create an exhaustive list.

At the outset, we agree with *Hooper* and *Kareem A.* that the Legislature's purpose was to allow judicial officers to sanction persons directly involved in a proceeding before the court for purposes of reducing delays and backlogs. (*Hooper*, *supra*, 40 Cal.App.5th at p. 693; *Kareem A.*, *supra*, 46 Cal.App.5th at p. 73.) Citing concerns that the bill as initially introduced would broadly allow courts to impose sanctions on persons not directly involved in the proceedings--specifically reporters, demonstrators, and courtroom observers--the Legislature suggested limiting the scope of the bill "to people directly involved in a proceeding before the court (e.g., parties, attorney's [*sic*], witnesses, jurors)." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Apr. 21, 1982, p. 3.)

We do not agree with the Department that the Legislature's decision to delete "but not limited to" and to add "witness" unambiguously establish a clear intent to create an exhaustive list of persons subject to sanctions including only parties, parties' attorneys,

16

and witnesses. First and as evidenced here, limiting the categories of persons subject to sanctions to only parties, parties' attorneys, and witnesses runs counter to the intent of the bill, which was to allow the court to impose sanctions on those persons directly involved in, and a necessary component of, the proceeding. Penal Code section 1370 *requires* the Department to produce a 90-day report designed to keep IST cases moving toward resolution. Recurring delays in admitting IST defendants resulting in the Department's repeated failure to timely produce 90-day reports results in the very delays and backlogs that led to the need for the ability conferred by section 177.5 for the trial court to impose sanctions and thereby encourage compliance with its orders as necessary for the orderly administration of justice. An interpretation of the statute excluding categories of persons whose involvement in the court proceeding is mandated by statute--such as a government agency with the statutory responsibility to receive the defendant and produce a report as to the defendant's mental health within a statutorily required timeframe--runs counter to the purpose of the statute.

Second, the concern raised by the Legislature, which led to the amendment to the bill, does not demonstrate a legislative intent to create an exhaustive list. Rather, the Legislature's stated concern suggested narrowing the scope of the bill to "people directly involved in a proceeding before the court (e.g., parties, attorney's [*sic*], witnesses, jurors)." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended Apr. 21, 1982, p. 3.) The list of persons listed by the Legislature-- parties, parties' attorneys, witnesses, and jurors--was provided as examples of the types of persons directly involved in a proceeding before the court, rather than as an exhaustive list of those persons. (See, e.g., *Aljabban v. Fontana Indoor Swap Meet, Inc.* (2020) 54 Cal.App.5th 482, 499 ["e.g." means "For example," while "i.e." "commonly indicates a clarification of a preceding term, not an example"].) The Legislature could have suggested narrowing the scope of the bill to an exhaustive list, but it did not do so.

17

Third, the amendment to the bill does not conclusively demonstrate an intent to narrow the scope of the bill to only those categories of persons listed. As recognized by *Kareem A.*, had the Legislature intended to create an exhaustive list, it could have easily done so with greater clarity in one of several ways, including (but not limited to): (1) specifying that "person" "includes *only* witnesses, parties, parties' attorneys, or both"; (2) dispensing with "includes" in the sentence describing "person" and instead defining "person" as "witnesses, parties, or parties' attorneys"; or (3) replacing "person" in the statute with "witnesses, parties, or parties' attorneys." (See *Kareem A.*, *supra*, 46 Cal.App.5th at p. 73.) Any of those actions would have clarified that the list of persons constituted an exhaustive list. In the absence of language clarifying that the list is exhaustive, we do not construe the amendments as creating an exhaustive list that would exclude entities seemingly falling well within the overarching purpose of the statute, such as the Department in this case.

Finally, we disagree with the Department's contention that adding "witness" to the list of persons would have been unnecessary if the list were simply intended to include all those "directly involved in a proceeding." As we have discussed, the Legislature sought to distinguish between those persons who were necessarily part of the actual proceedings ongoing before the court, such as witnesses, parties, and parties' attorneys, and those not involved or ancillary to the actual proceeding, including demonstrators, reporters, and courtroom observers. Had the statute only listed parties and parties' attorneys, the rule of construction *ejusdem generis* may have led courts to construe the statute as only extending to litigants. By including "witness" in the list, the Legislature clarified that the list extended to all persons directly before the court, whose presence, and participation, and cooperation was necessary to conduct the proceedings in the case before it.

The Department argues the *Hooper* court did not fully define the scope of persons subject to sanctions under the statute. But it did not need to do so; nor do we. "We need not define how broadly . . . section 177.5 sweeps beyond witnesses, parties, and parties'

counsel in other factual contexts or statutory regimes not before us, and decline to do so."
(*Kareem A.*, *supra*, 46 Cal.App.5th at p. 74.)  We agree with *Hooper* and *Kareem A.* that the Department is more like a party than an observer in the IST proceedings at issue here; its necessary role in evaluating referred defendants and ensuring their cases resolve in a timely fashion is not at all comparable to the roles of reporters, demonstrators, or courtroom observers.  (*Hooper*, *supra*, 40 Cal.App.5th at p. 693, *Kareem A.*, *supra*, 46 Cal.App.5th at p. 74.)  The Department has a *statutory* duty to admit IST defendants, administer treatment, and report to the trial court on the results of that treatment *before those cases can proceed*.  (Pen. Code, § 1370, subd. (a)(B)(i); *Kareem A.*, at p. 74.)  As an entity subject to a court order with such a critical set of statutory obligations, we agree that in IST cases the Department is directly involved in the IST proceeding before the court such that it qualifies as a "person" pursuant to section 177.5.

Moreover, the sanctions here were imposed consistent with the purposes of the statute, which include punishing and deterring violations of lawful court orders (*In re Woodham* (2001) 95 Cal.App.4th 438, 443-444) and compensating the judicial system for the cost of unnecessary hearings (*Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 499). Systematic delays in criminal cases of IST defendants resulting from the Department's failure to timely admit, treat, and report on those defendants is the type of delay contributing to backlogs of criminal calendars.  We disagree with the Department that it is exempt from sanctions under section 177.5 simply because it is not a party, a party's attorney, or a witness.[5]

---

[5]  Given this conclusion, we do not address the Department's argument that it is not a witness, a party, or a party's attorney.  Also, because our review is de novo, we need not and do not address the Department's arguments regarding the trial court's reasoning.

19

## II

### *Department's Good Cause Showing*

"Section 177.5 requires only that a court find the person violated the order 'without good cause or substantial justification.'  This does not require 'a willful violation, but merely one committed . . . without a valid excuse.'  [Citations.]" (*Kareem A.*, *supra*, 46 Cal.App.5th at p. 78.)  The Department contends the trial court abused its discretion in imposing sanctions because there was good cause or substantial justification for its failure to comply with the court's admission deadlines.  It raises two arguments: (1) it could not have complied with the admission deadlines without harm to IST defendants from other counties; and (2) it has been working diligently with other stakeholders to attempt to resolve the waitlist problem but has been unable to do so.  We do not agree that the trial court abused its discretion.

"We review orders imposing sanctions for abuse of discretion.  [Citation.]  The trial court must exercise its discretion in a 'reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards.'  [Citation.]  A mere difference of opinion between the appellate and trial courts is insufficient to warrant reversal.  [Citation.]" (*Hooper*, *supra*, 40 Cal.App.5th at pp. 691-692.)  " 'An appellate tribunal is not authorized to substitute its judgment for that of the trial judge.  [Citation.]  A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice.  [Citation.]  In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered.'  [Citation.]" (*In re Woodham*, *supra*, 95 Cal.App.4th at p. 443.)  The Department has the burden to establish an abuse of discretion.  (*Trailmobile, Inc. v. Superior Court* (1989) 210 Cal.App.3d 1451, 1455.)

The trial court rejected each of the Department's arguments in its omnibus order imposing sanctions.  The court explained in the introduction to the order:  "Lengthy wait times are not new.  The Court has previously found the Department in contempt on

20

multiple occasions and sanctioned the Department for failing to timely admit defendants to a state hospital for competency restoration treatment. The responsibility to fix the problem falls squarely on the shoulders of the Department. The Court is convinced that none of the collaborative efforts over the past several years have given the Department sufficient incentive to carry out that responsibility, and the problem has not been fixed. The Department continues to violate the Court's orders in a large number of cases each year." [6]

The trial court recognized that the Department is an agency of the State of California, not an isolated entity, and any lack of resources is due to a deliberate budgetary decision by the State. The court "reject[ed] the notion that the State can repeatedly violate the due process rights of the mentally ill by denying the responsible agency adequate resources necessary to comply with Penal Code [s]ection 1370; and to then subsequently claim that the agency's inability to meet the need constitutes good cause."

The trial court also rejected the Department's argument that its efforts to solve the waitlist problem constituted good cause or substantial justification. The court found: "It goes without saying that the ongoing efforts by the Department do not help the individuals whose due process rights have already been violated. The Court further notes that after five years of holding hearings on the issue the delays in admission are only slightly better today than they were when this Court started hearings. In no way has any improvement been sufficient to indicate that the need for the orders, or their enforcement, has been eliminated. The Department touts improvements but the fact remains that as of the date of this order most defendants are waiting well beyond the 60 day order (from the

---

[6] We note that our colleagues observed in *Kareem A., supra*, 46 Cal.App.5th at page 79, that the Department "has had over a decade to evolve in order to meet the rising demand of IST beds, and yet the IST waitlist has continued to grow."

providing of the packet); and do not have a meaningful report within the time period mandated by Penal Code [s]ection 1370.  The Department continues to violate nearly every 60-day admit-by order set by the Court, and Penal Code [s]ection 1370, by a considerable margin."

The Department does not contend the trial court failed to consider its arguments, that it considered improper evidence, that its findings do not reflect the evidence presented, or that it applied an incorrect legal standard (aside from the court's conclusion it could impose sanctions against the Department under § 177.5, as discussed *ante*). Rather, the Department raises the same arguments on appeal that it did at the trial court, and it simply asks us to disagree with the trial court.  But as we have explained, even if we were to disagree with the trial court's findings, which the Department provides no reason for us to do, a mere difference of opinion is not enough to warrant reversal. (*Hooper*, *supra*, 40 Cal.App.5th at pp. 692.)  We conclude the trial court's decision was not an abuse of discretion.

The Department makes two final arguments, which we reject.  First, the Department contends the sanctions order raises a separation of powers concern because the order directs an executive agency to transfer funds to the judicial branch in a manner the Legislature has not authorized.  As we have discussed, we disagree the sanctions order was not authorized by the Legislature.  Additionally, the authority cited by the Department, *California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, is inapposite.  That case held separation of powers "forbids the judiciary from issuing writs that direct the Legislature to take specific action, including to appropriate funds." (*Id* at p. 799.)  That is not what occurred here.  Moreover, courts have held that a public agency may be sanctioned under section 177.5 (see, e.g., *People v. Tabb* (1991) 228 Cal.App.3d 1300, 1312 [deputy public defender could be sanctioned under § 177.5]), which undermines the Department's argument.

22

Second, the Department contends (without citing any authority) the trial court's order is counterproductive because the funds used to pay the sanctions order could instead be directed towards providing care and services to individuals with mental illness. That may be so, but given the unchallenged findings of the trial court concerning the longstanding nature of this issue, the absence of substantial reduction in wait times during the years the trial court has been presiding over litigation concerning this issue, and the importance of the rights at stake, the trial court did not abuse its discretion in determining that the Department's insufficient efforts to address the waitlist problem did not constitute good cause or substantial justification for its repeated violation of a court order.

## DISPOSITION

The sanctions orders are affirmed.  Costs on appeal are awarded to the respondents.  (Cal. Rules of Court, rule 8.278(a) & (b).)


/s/
Duarte, J.



We concur:



/s/
Blease, Acting P. J.



/s/
Mauro, J.

23