Filed 12/10/25  In re D.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re D.T., a Person Coming Under the Juvenile Court Law. | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | C103202 |
| Plaintiff, | (Super. Ct. No. STK-JD-DP-2024-0000108) |
| v. | |
| D.T. et al., | |
| Defendants; | |
| M.O., | |
| Objector and Appellant. | |

Appellant Melina Oropeza, a social worker in this juvenile dependency matter, told minor D.T.'s grandmother that she could take minor to Mexico.  After issuing an order to show cause, the juvenile court sanctioned Oropeza under Code of Civil Procedure section 177.5 for violating a court order prohibiting minor from being taken

1

outside the state without court permission.[1]  Oropeza appeals, arguing that the court did not make adequate factual findings to justify the sanctions order, violated her due process rights, and was precluded from imposing sanctions because of various immunities enjoyed by public officials.  She also challenges the court's rejection of her peremptory challenge under section 170.6.  We find no error in the sanctions order and conclude that the denial of Oropeza's peremptory challenge is not appealable.  Accordingly, we affirm the sanctions order.

BACKGROUND

In April 2024, the juvenile court issued detention orders removing minor from his parents' custody and placing him in the care of his maternal grandmother (grandmother).  No reporter's transcript of the hearing appears in the record, but the court's minute order states:  "Minor(s) not to leave the State without a Court Order."

At the May 2024 jurisdictional and dispositional hearing, the juvenile court adjudged minor a dependent and removed him from his parents' custody.  Again, no reporter's transcript of the hearing appears in the record, but the minute order reflects that the court authorized grandmother to obtain a passport for minor.  The order did not mention any specific travel plans.

Oropeza, a social worker with the San Joaquin Human Services Agency (Agency), was subsequently assigned to the case.  At about 3:00 pm on July 3, 2024, Oropeza filed an ex parte travel request asking that grandmother be permitted to take minor to Mexico on July 6, 2024 and stay until July 29, 2024.[2]  The request, which was signed under penalty of perjury, stated that it had been discussed with the parties and that there was no opposition to it.  The request and its accompanying attachments reflected that:

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

[2]  The travel requests that Oropeza submitted are not included in the clerk's transcript, but the juvenile court described each of them in its order imposing sanctions.

(1) minor's counsel had informed Oropeza that she (minor's counsel) did not oppose the request; (2) Oropeza emailed father's counsel about the proposed travel but received no response; (3) Oropeza did not attempt to contact father because he was incarcerated; (4) mother did not return Oropeza's phone call; and (5) mother's counsel stated that she would try to contact her client and, if her client agreed to the travel request, counsel had no opposition to it. Oropeza spoke with grandmother in the evening of July 3 and told her that she could take minor on the trip, "but if the order was denied she would need to return from Mexico."

The juvenile court did not see Oropeza's request until July 5, 2024, the day after the Fourth of July holiday. Noting the lack of affirmative consent from all parties, the court denied the request.

On July 16 or 17, 2024, Oropeza filed a second ex parte request to allow minor to travel to Mexico on the same dates proposed in the first travel request (July 6 through July 29). The second request was again signed under penalty of perjury and again stated that there was no opposition to it. The request noted that Oropeza had not received responses from mother's counsel or father's counsel. It also stated that grandmother was "currently in Mexico with the minor."

After reviewing the request, the juvenile court issued an order to show cause why Oropeza and the Agency should not be sanctioned "for violating the rule that juvenile court authorization is required for a child to travel to another country for any reason." At a July 23, 2024 hearing, the court explained its belief "that without good cause or substantial justification, Ms. Oropeza allowed the foster parent to take the minor to another country, to wit, Mexico . . . [a]fter she knew that the travel request . . . submitted on July the 5th, 2024 was denied by this Court." The court set forth the conduct and sequence of events giving rise to its belief that a court order had been violated. The court also stated that it intended to call Oropeza to testify. The Agency requested a

3

continuance, and the court set a continued hearing. The court provided all parties with copies of the relevant reporter's transcripts and travel requests.

Agency counsel declared a conflict as to Oropeza, and the Agency retained new counsel to represent her. Oropeza's new counsel first appeared on September 10, 2024 and filed a peremptory challenge under section 170.6 to disqualify the assigned judge. The court rejected the challenge as untimely. The court reasoned that Oropeza was not a new party because she had previously appeared in the case as an employee of the Agency and the Agency had already filed a peremptory challenge concerning a different judge. The court further concluded that, even if Oropeza had become a new party when the Agency declared a conflict, her challenge was still untimely.

Oropeza's counsel asked for Agency documents related to the matter, and the Agency agreed to produce them. The juvenile court also provided Oropeza's counsel with the documents and transcripts it had previously given to the other parties. The court set the order to show cause hearing for October 25, 2024.

Oropeza filed a petition for writ of mandate in this court seeking review of the juvenile court's rejection of her peremptory challenge. The petition was denied without prejudice to refiling "with adequate supporting documents, including the challenged order and proof of service showing that the petition is timely." Oropeza filed a new petition, and this court denied it.

On October 25, 2024, Oropeza filed a motion to disqualify the juvenile court judge under section 170.1. The court ordered the motion stricken under section 170.4, subdivision (b). The court continued the matter to December 20, 2024.

At the start of the December 20, 2024 hearing, Oropeza's counsel requested a continuance on the grounds that Oropeza was "visibly not well," was feeling nauseous, and "has been fidgeting" since arriving at court. Counsel noted that the Agency had placed Oropeza on administrative leave, causing "some physical and emotional distress for her." After confirming that Oropeza did not have a doctor's note, the juvenile court

4

denied the request, noting that the matter had already been continued multiple times. It said, "at some point, we have to move this hearing along."

The parties then announced that they had agreed to three factual stipulations: First, that if called to testify, grandmother would say "that on the evening of July 3rd, Social Worker Oropeza called her and told her that she could go on the trip with [minor], but if the order was denied she would need to return from Mexico." Second, as to the second ex parte travel request, Oropeza sent an email to father's counsel, mother's counsel, minor's counsel, and Agency counsel acknowledging that minor was already in Mexico. Third, at the time of the email, Agency counsel was on vacation. The juvenile court asked the parties if they would be calling any witnesses, and each responded in the negative. Oropeza's counsel renewed his request to continue the matter, saying that Oropeza had seen a doctor and "they were in the process of preparing and submitting a note that being in this environment today, given the administrative leave, is unduly stressful to her." The court denied the request.

The parties then presented argument on the issues. The Agency argued that Oropeza was solely responsible for the violation of the court's orders and only she should be sanctioned. Oropeza's counsel acknowledged that Oropeza had made mistakes but the Agency should bear ultimate responsibility. He acknowledged that, if Oropeza told grandmother she could take minor out of the country without a court order, it would be sanctionable, but he argued there was not sufficient evidence to find that she had done so. He asserted that Oropeza is a "layperson who doesn't understand the impact of legal pleadings" and "misled the Court unintentionally." In response to questioning by the court, Oropeza's counsel acknowledged that Oropeza had been a social worker for 11 years, had made travel requests "[m]any times" in that capacity, and was familiar with the process for obtaining a court order.

Oropeza's counsel discussed the possibility of Oropeza testifying to address the court's questions, and the juvenile court stated that it would need to advise her of her

5

constitutional right against self-incrimination. Counsel said that Oropeza could not testify because she was not feeling well, and he had never planned on having her testify. He declined to call her to testify.

The Agency offered to enter into a stipulation as to how Oropeza's supervisor would testify. The parties stipulated that, if the supervisor were called, "she would testify that on or around, approximately, July 9th, late in the day, she had a conversation with Ms. Oropeza. Ms. Oropeza advised her of the minor being in Mexico. That – or they discussed that the minor was in Mexico. That Ms. Oropeza had told [grandmother] to return from Mexico and to book those tickets. And that she was going to seek an order to enable [minor] to be able to safely return. [¶] . . . [¶] That [Oropeza's supervisor] agreed with the plan as presented to her, and advised Ms. Oropeza that she needed to let all counsel know about what was going on with [minor] and the plan to get him home safely."

Oropeza's counsel argued that the juvenile court had "sufficient information[,] although, there is more that mitigates," and offered that the parties could return to provide "other evidence, and other witnesses, or other stipulations." The court took the matter under submission, and Oropeza personally objected, urging that the court had not allowed her "a continuance or right for trial based on everything that's been discussed here." The court noted the objection.

The juvenile court issued a written order imposing sanctions on both Oropeza and the Agency. With respect to Oropeza, the court found that she violated a court order "when she gave the caretaker permission to take the minor to Mexico before securing a court order to authorize said travel. In fact, it is undisputed (per stipulation) that on July 3, 2024, prior to obtaining a court order to do so, Ms. Oropeza told the caretaker she could take the minor to Mexico, but also told her that if the travel request was denied, she would have to bring the minor back to California. In reliance thereon, the caretaker took the minor to Mexico without court approval. This conduct by Ms. Oropeza is a clear

6

violation of the longstanding existing and well-established court order the Juvenile Court authorization is required before a dependent child can travel out of the country."

The juvenile court also found fault with Oropeza's statements in the first travel request. "With the knowledge that a court order is required before a dependent minor is allowed to travel out of the country, and with the knowledge that she has already told the caretaker that she could take the minor to Mexico, Ms. Oropeza still proceeded to submit a travel request to the court under penalty of perjury, asking for permission from the court for the foster mother to travel to Mexico with the minor." The court found it "particularly notable that Ms. Oropeza failed to mention to any of the parties on the case, or to the court, that she had already told the caretaker she could take the minor to Mexico. Ms. Oropeza failed to mention this to anyone because she clearly knew she needed court authorization before allowing a child to travel out of the country."

The juvenile court further reasoned that Oropeza's actions in filing the second travel request compounded the improper conduct. Although the request acknowledged that minor was in Mexico, it failed to mention that Oropeza had given grandmother permission to travel there. The court found that Oropeza's unilateral approval of the trip to Mexico was "egregious and done without good cause or substantial justification." "Even more concerning is that Ms. Oropeza submitted a second travel request when she knew the first request had been denied and she knew the minor was already in Mexico."

The juvenile court also determined that the Agency acted in violation of the court's orders. The court found that the Agency "became complicit in Ms. Oropeza's continued violation of the court order" by failing to take timely and appropriate action to inform the court and other parties about the situation and to assure minor's return to California. The Agency's conduct, moreover, was "without good cause or substantial justification." The court ordered Oropeza and the Agency each to pay $750 in sanctions to the court.

Oropeza filed a timely notice of appeal.

7

DISCUSSION

Under section 177.5, a court may "impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), . . . for any violation of a lawful court order by a person, done without good cause or substantial justification. . . . [¶] Sanctions pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or on the court's own motion, after notice and opportunity to be heard. An order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order." Section 177.5 does not require that a person acted in bad faith or "a willful violation, but merely one committed without 'good cause o[r] substantial justification,' that is, without a valid excuse." (*Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075, 1081.) " '[T]he scope of a hearing on an application for sanctions is within the trial court's discretion.' " (*Ibid.*, italics omitted.)

An order imposing sanctions under section 177.5 is reviewed for an abuse of discretion. (*20th Century Ins. Co. v. Choong* (2000) 79 Cal.App.4th 1274, 1277.) " '[A]n abuse of discretion will be found on appeal if a sanctions order rests on incorrect legal premises [citation] or violates due process, matters we decide exercising our independent review. Alternatively, an abuse of discretion will be found if the findings underlying the order under review are factually unsupported [citation], which requires us to "assess[] the record for substantial evidence to support the court's express or implied findings" [citation].' " (*People v. Edwards* (2023) 88 Cal.App.5th 1259, 1266-1267.)

I.

Oropeza contends that the juvenile court failed to make sufficient findings of fact or identify specific sanctionable conduct, neglected to consider her good faith belief that the travel did not violate the court's orders, and erroneously relied on stipulated testimony without affording her the opportunity to cross-examine witnesses. We find no merit in these contentions.

8

The juvenile court's written order contains a detailed recitation of the conduct justifying sanctions. The order explains that Oropeza told minor's grandmother that she could take minor to Mexico, notwithstanding a standing court order forbidding such travel without court permission. In both travel requests, Oropeza made misrepresentations about which parties she had contacted and their respective positions. After hearing from all parties, the court explained that it saw no good cause or substantial justification for these actions, given Oropeza's experience as a social worker and repeated failures to notify anyone that she had already unilaterally authorized the travel without court permission. These findings were supported by substantial evidence. The parties stipulated that grandmother would testify that Oropeza authorized her to travel with minor before any court approval. And the court had before it the travel requests containing Oropeza's statements.

We are also unpersuaded by Oropeza's argument that the juvenile court failed to consider mitigating circumstances, such as her good faith belief that she was not violating any court order. First, Oropeza's good faith, or lack thereof, is not relevant to the issue of sanctions under section 177.5. (*Seykora v. Superior Court*, *supra*, 232 Cal.App.3d at p. 1081.) Second, Oropeza identifies no facts in the record showing that she had good cause or substantial justification for failing to comply with the court's order forbidding travel without judicial authorization. Oropeza declined the opportunity to testify and did not call grandmother or her supervisor as witnesses, even though both were present at the order to show cause hearing. Oropeza's argument at the hearing as to good cause was that the Agency should have had a better procedure in place and she did not understand "the nature of legal proceedings." The juvenile court noted, however, that Oropeza had been a social worker for 11 years. We see no indication the court ignored any mitigating circumstances.

Oropeza also argues that the juvenile court erred by relying on stipulated testimony that was not subject to cross-examination. This contention is forfeited because

9

Oropeza stipulated to the testimony below and did not make any hearsay objection. (Evid. Code, § 353, subd. (a); *In re Clara B.* (1993) 20 Cal.App.4th 988, 1000.) Moreover, both grandmother and Oropeza's supervisor were present at the hearing and Oropeza could have called them as witnesses and cross-examined them, but declined to do so.

## II.

Oropeza additionally contends that the juvenile court's procedures violated her due process rights by failing to give her adequate notice and opportunity to be heard. We disagree.

To comply with due process guarantees, a court "may raise the issue of sanctions on its own motion but, in doing so, it *must* give notice of its intent to impose sanctions. [Citation.] That 'notice must be given *before* findings are made and at a time preceding the trial judge's decision whether, in fact, to impose sanctions.' [Citation.] '[The] adequacy of notice should be determined on a case-by-case basis to satisfy basic due process requirements. The act or circumstances giving rise to the imposition of expenses must be considered together with the potential dollar amount.' " (*Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, 70.) An opportunity to be heard requires " 'an objective hearing at which the person is permitted to address the lawfulness of the order, the existence of the violation, and the absence of good cause or substantial justification for the violation.' " (*People v. Hundal* (2008) 168 Cal.App.4th 965, 970.)

The juvenile court's procedures in this case satisfied these standards. The court first notified the parties that it was contemplating sanctions at a hearing on July 23, 2024. The court identified the specific conduct it believed violated a court order, then granted a continuance and provided the parties with the relevant reporter's transcripts and filings. The matter was continued multiple times, and Oropeza was given independent counsel and additional time to collect documents. The court also provided her counsel with the documents it had previously provided to the other parties. Oropeza's counsel first

10

appeared on September 10, 2024, and the matter was not heard until December 20, 2024. Oropeza thus had nearly six months of notice that sanctions could be imposed—more than three months of which she was represented by independent counsel. This was adequate notice.

For these same reasons, we see no abuse of discretion in the juvenile court's denial of Oropeza's requests for a continuance at the hearing, sought on the ground that she was experiencing emotional distress. " 'Trial courts generally have broad discretion in deciding whether to grant a request for a continuance.' " (*J.M. v. W.T.* (2020) 46 Cal.App.5th 1136, 1139; see also *In re D.N.* (2020) 56 Cal.App.5th 741, 756 [juvenile court's denial of continuance reviewed for abuse of discretion].) The court granted Oropeza multiple continuances sufficient for new counsel to be appointed and for her counsel to receive and review relevant documents. Under these circumstances, the juvenile court did not abuse its discretion in finding that Oropeza failed to show good cause for another continuance.

Oropeza also received an adequate opportunity to be heard. At the order to show cause hearing, the juvenile court allowed her to testify and call witnesses, but she declined. Her counsel addressed the court and made extensive arguments in opposition to a sanctions order. While the court relied on stipulated testimony, Oropeza joined those stipulations and could have contested them if she wished.

In sum, we conclude that Oropeza received the process she was due.

III.

Oropeza further claims that she could not be sanctioned because, as a county social worker, she is protected by federal qualified immunity and various statutory immunities under Government Code sections 820.2, 820.4, and 821.6. This contention is forfeited because she did not raise the issue in the juvenile court. (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 853; cf. *Gomez v. Toledo* (1980) 446 U.S. 635, 640 [official seeking qualified immunity bears burden of invoking it]; *Quigley v. Garden Valley Fire*

11

*Protection Dist.* (2019) 7 Cal.5th 798, 807, 809, 815-816 [permitting forfeiture of immunities under Government Claims Act].) In any event, Oropeza cites no authority supporting her contention that these immunities, which generally shield public officials from suits for damages, apply to a state court's sanctions order in a state juvenile dependency matter. (E.g., *Pearson v. Callahan* (2009) 555 U.S. 223, 231 [qualified immunity protects government officials from "suit" for " 'civil damages' "]; *County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1049 [Government Claims Act "is concerned with shielding public entities from tort claims seeking money damages"].)

IV.

Oropeza additionally maintains that the juvenile court erred when it rejected her peremptory challenge under section 170.6. Section 170.3, subdivision (d) provides that "[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate." This statute applies to peremptory challenges under section 170.6. (*People v. Hull* (1991) 1 Cal.4th 266, 276.) Accordingly, the order denying Oropeza's section 170.6 motion is not appealable. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 195.)

DISPOSITION

The order imposing sanctions under section 177.5 is affirmed.

/s/
FEINBERG, J.

We concur:

/s/
DUARTE, Acting P. J.

/s/
RENNER, J.

12